**Michael A. WILLIAMS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A04–0207–CR–315.

Court of Appeals of Indiana.

Dec. 9, 2002.

John T. Wilson, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBERTSON, Senior Judge.

### STATEMENT OF THE CASE

Michael Williams ("Williams") appeals the trial court's exclusion of testimony regarding a prior accusation of sexual misconduct.

We affirm.

### ISSUE

Whether the trial court erroneously prohibited Williams' counsel from cross-examining C.C. and her father, Jeff, about a prior sexual contact.

### FACTS

C.C. (born 9/15/86) and her parents lived in Alexandria. C.C.'s sister, Jennifer, lived across the street with her two children and boyfriend, Williams. On July 3, 2001, C.C.'s parents left town to celebrate their anniversary. Sometime between 6:00 and 7:00 p.m., C.C. went across the street to visit her four-year-old niece and one-year-old nephew. C.C. was wearing a pair of blue-jean shorts, a tank-top, and sandals. At that time, Williams was home with the two children while Jennifer was at work.

When C.C. entered the trailer, her niece was on the couch, her nephew was sitting on the floor watching T.V., and Williams was in the kitchen. While C.C. was speaking with her niece, Williams walked into the living room, said hello, and went into the bedroom. Williams then asked C.C. to come into the bedroom. C.C. went into the bedroom to see what Williams wanted. When she turned to leave, Williams put one hand around her and the other up her shirt touching her breasts. Williams began kissing C.C. on her neck and shoulder and asked her to kiss him. Williams tried to turn C.C. around, but C.C. refused.

After a few minutes, Williams stopped holding C.C. and went back into the kitchen. Subsequently, C.C.'s nephew came into the bedroom. C.C. put him on the bed and she lay down on her stomach next to him. She closed her eyes, pretending to be asleep. C.C.'s nephew did not go to sleep, but was sitting up on the bed. Eventually, Williams came back into the bedroom. While asking C.C. if she would have sex with him, Williams placed his hand on C.C.'s leg, moved his hand underneath her shorts, and inserted his finger into her vagina. Williams attempted to roll C.C. onto her back, but she resisted and told him "no." (Tr. 44).

After approximately five minutes, Williams got up and left the house. C.C. subsequently left the house and went back home. When C.C. got home, she telephoned a friend and told her what had happened. Soon thereafter, Williams entered her home and told her that he needed to use the telephone. C.C. hung up and Williams proceeded to make a call, after which, he left. Later that night, C.C. went to a midnight parade in Anderson with her sister and several others, but she did not tell them what had happened. On July 7, 2001, C.C. told another friend about the events that occurred on July 3, 2001. C.C.'s parents were subsequently informed on July 8, 2001, and they called the police.

On August 8, 2001, Williams was charged with one count of sexual misconduct with a minor, a class B felony. A jury trial was held on February 21, 2002. During trial, the State, over Williams' objection, orally moved to prohibit any testimony concerning C.C.'s sexual history under Indiana Evidence Rule 412. The trial court granted the State's motion, and Williams, outside the presence of the jury, submitted the following testimony as an offer of proof: (1) C.C. testified that when she was twelve, one of Jennifer's boy-

friends (not Williams) touched her breasts; C.C. also testified that she told her father a year later; and (2) C.C.'s father, Jeff, testified that C.C. never told him of this alleged incident. The State objected to the proposed testimony, and the trial court sustained its objection.

On February 22, 2002, the jury found Williams guilty of sexual misconduct with a minor. On March 18, 2002, a sentencing hearing was held. The trial court sentenced Williams to serve 20 years imprisonment with 10 years executed for the charge of sexual misconduct.

## DECISION

Williams appeals the trial court's exclusion of C.C. and Jeff's testimony as violative of his Sixth Amendment right to cross-examination. Specifically, Williams argues that C.C. and Jeff's testimony was offered to challenge C.C.'s credibility in order "to bring out a possible bias, or motivation[ ] to fabricate." Williams' Br. at 11.

The decision to admit or exclude evidence is within the trial court's sound discretion and is afforded great deference on appeal. *Zawacki v. State*, 753 N.E.2d 100, 102 (Ind.Ct.App.2001), *trans. denied*. We will generally not reverse a trial court's exclusion of evidence except when the exclusion is a manifest abuse of discretion resulting in a denial of a fair trial. *Id.* "An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Moreover, this court will find an abuse of discretion when the trial court controls the scope of cross-examination to the extent that a restriction substantially affects the defendant's rights." *Id.* at 102 (citations omitted).

Ind. Evidence Rule 412 reads as follows:

(a) In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:

(1) evidence of the victim's or of a witness's past sexual conduct with the defendant;

(2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded;

(3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or

(4) evidence of conviction for a crime to impeach under Rule 609.

(b) If a party proposes to offer evidence under this rule, the following procedure must be followed:

(1) A written motion must be filed at least ten days before trial describing the evidence. For good cause, a party may file such motion less than ten days before trial.

(2) The court shall conduct a hearing and issue an order stating what evidence may be introduced and the nature of the questions to be permitted.

(c) If the state acknowledges that the victim's pregnancy is not due to the conduct of the defendant, the court may instruct the jury accordingly, in which case other evidence concerning the pregnancy may not be admitted.

The rule exists because an

inquiry into a victim's prior sexual activity is sufficiently problematic that it should not be permitted to become a focus of the defense. Rule 412 is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and, importantly, to

remove obstacles to reporting sex crimes.

*State v. Walton,* 715 N.E.2d 824, 826 (Ind. 1999) (quoting *Williams v. State,* 681 N.E.2d 195, 200 (Ind.1997)). As a result, the Rule does not allow the trial to " 'stray from the central issue of guilt or innocence of the defendant into a full-scale investigation of charges made by the prosecutrix against other persons.' " *Id.* at 826 (quoting *Stewart v. State,* 531 N.E.2d 1146, 1149 (Ind.1988)).

However, there is a common law exception when a defendant seeks to introduce evidence of a prior false accusation of rape.[1] *Walton,* 715 N.E.2d at 824. Our supreme court has held that while Evid. R. 412 is only designed to exclude evidence of a complaining witness's prior sexual conduct, "[e]vidence of prior false accusations of rape made by a complaining witness does not constitute 'prior sexual conduct' for rape shield purposes." *Id.* at 826.

> In presenting such evidence, the defendant is not probing the complaining witness's sexual history. Rather, the defendant seeks to prove for impeachment purposes that the complaining witness has previously made false accusations of rape. Viewed in this light, such evidence is more properly understood as verbal conduct, not sexual conduct.

*Id.* at 826. As a result, "evidence of prior false accusations of rape is admissible to attack the credibility of the accusing witness, notwithstanding the general exclusionary edict of Rule 608(b)." *Id.* at 827 (restricting attack of witness credibility by evidence of specific instances of the conduct of a witness). Evidence of prior false accusations may be admitted if "(1) the complaining witness admits he or she made a prior false accusation of rape; or (2) the accusation is demonstrably false." *Id.* at 828.

In this case, there is no evidence that C.C. admitted to making a prior false accusation of rape. Therefore, we consider whether the testimony submitted as an offer of proof constitutes a demonstrably false accusation. Williams seems to argue that the excluded testimony, combined with the following facts about the instant accusation, show that C.C.'s accusation was demonstrably false: (1) C.C. waited several days to tell an adult; (2) C.C. did not lock the door to her house after returning home; (3) C.C. went to a parade the night of the incident; (4) C.C. was seen talking to a neighbor at around 9:00 p.m. the evening of the incident; and (5) C.C. went shopping with her sister on July 7, 2001. We disagree.

In *State v. Walton,* the defendant was acquitted of rape after the trial court admitted evidence of prior false accusations of rape made by the complaining witness. In that case, the complaining witness denied that she had ever been raped, but two of the complaining witness's former coworkers "testified that they were friends of the complaining witness, and that she had told them that she had been raped on two prior occasions. In addition, both witnesses testified that the complaining witness told them that her child was a product of one of the rapes." 715 N.E.2d at 825. Reversing the Court of Appeals, our Supreme Court found that there was sufficient evidence to support a finding that the accusations were demonstrably false.

In this case, we merely have an inference that the accusation is false. Williams'

---

1. In this case, C.C.'s accusation is of sexual misconduct with a minor and not rape. However, because Ind. Evidence R. 412 applies to "sex crimes" and not just the crime of rape, we find that the common law exception to prior false accusations of rape should apply to prior false accusations of sex crimes.

counsel asked C.C., "Do you remember the time during [previous] questioning when I asked you if any of Jennifer's boyfriends had ever done anything sexual to you or tried to hit on you?" Tr. 56. C.C. stated that she remembered making the accusation and that she told her father about it a year later. Williams' counsel then asked Jeff if he remembered answering "no" to the following question: "[W]hether or not [C.C.] had ever told you before the incident that's the subject matter of this case, that an adult had ever touched her improperly?" Tr. 58. Jeff answered, "Yes." Tr. 58. The trial court then excluded the testimony. Unlike *Walton*, there is no evidence that C.C. made *contrary* statements about *whether or not* the sexual misconduct occurred.

We give great deference to the trial court's decision to admit or exclude evidence. *Zawacki*, 753 N.E.2d at 100. " 'Because the predicates or foundational requirements to admissibility often require factual determinations by the trial court, these findings are entitled to the same deference on appeal as any other factual finding, whether that is described as a clearly erroneous or abuse of discretion standard.' " *Walton*, 715 N.E.2d at 828 (quoting *Stahl v. State*, 686 N.E.2d 89, 91 (Ind.1997)). Based on the evidence in the record, we cannot say that the trial court's exclusion of their testimony is a manifest abuse of discretion.

Affirmed.

BROOK, C.J., and KIRSCH, J., concur.

