Michael **MORRISON**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0403–CR–216.

Court of Appeals of Indiana.

March 31, 2005.

Transfer Denied June 1, 2005.

Jan B. Berg, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Michael Morrison ("Morrison") appeals his convictions for two counts of attempted criminal deviate conduct as Class B felonies[1] and two counts of sexual battery as Class D felonies.[2] Morrison also challenges his executed fifteen-year sentence in light of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *rehg. denied.* We affirm in part and remand for vacation of two convictions.

### Issues

Morrison raises four issues, which we consolidate and restate as:

I. Whether the trial court abused its discretion by excluding evidence of the victim's prior sexual history under Indiana Evidence Rule 412;

II. Whether the evidence is sufficient to support his attempted criminal deviate conduct and sexual battery convictions; and

III. Whether he was denied his Sixth Amendment right to have a jury determine, beyond a reasonable doubt, all facts legally essential to his sentence when the trial court found a certain aggravating circumstance and sentenced him to an executed term of fifteen years.

In addressing Morrison's second issue, we first examine, *sua sponte*, whether his convictions for two counts of attempted criminal deviate conduct as Class B felonies, as well as his simultaneous convictions for two counts of sexual battery as Class D felonies, violate the Indiana Constitution's prohibition against double jeopardy.

### Facts and Procedural History

On July 1, 2003, Rick White ("White") went swimming at Thompson Park Community Pool ("Pool"). White, who was twenty-seven-years old at the time, is "moderately mentally handicapped." Tr. at 233. While at the Pool, White met, for the first time, and engaged in conversations with Morrison, Joni Davee ("Davee"), and Elizabeth Zielska ("Zielska").

At some point that day, Morrison asked White to guess how long that Morrison could stay under water. Morrison then swam underwater from the deep end of

---

1. Ind.Code §§ 35–42–4–2; 35–42–5–1.

2. Ind.Code § 35–42–4–8.

the pool to the shallow end, where White was standing. Subsequently, Morrison went underwater and began performing oral sex upon White. During this sexual encounter, White "kept looking around like he really wasn't sure what was going on. He kept like looking down to what [Morrison] was doing and looking around like he wasn't sure what to do or what was going on." *Id.* at 62. On two separate occasions, Morrison came up for air, immersed himself back into the water, and continued performing oral sex upon White. Once, White "tried to put his hands under water and [Morrison] moved his hands out of the way. [Morrison] stuck his hand out of the water and moved [White's.]" *Id.* at 47. When Morrison finally came out of the water, he kissed White "using his tongue." *Id.* Davee noticed that, during this entire incident, White "looked like he didn't know what was going on." *Id.*

Eventually, Morrison and White left the pool and went into the bathhouse. On his way to the bathhouse, White told Davee and Zielska that he had heard the ice cream truck and asked them for the time. In the bathhouse, while White was in the process of using a urinal, Morrison "touched [White's] pee pee with his hand." *Id.* at 118. White then proceeded to a restroom stall, locked the door behind him, and began using the restroom. Morrison climbed underneath the locked door to the stall and touched White's buttocks. As White attempted to pull up his swim trunks, Morrison "put his penis ... inside [White's] butt." *Id.* at 124. White pushed Morrison away. White opened the door to the restroom stall and attempted to leave the bathhouse, but Morrison "pulled [him] back into the shower." *Id.* at 127. There, Morrison removed White's shirt and swim trunks, pushed White onto the ground, and got on top of White. Morrison next began "humping" White, which White described as Morrison's penis being connected to his

penis. *Id.* at 128. White "tried to get up and put [his] clothes back on ... and [Morrison] falled (sic) down and pushed [White] on top of him and tried to hump [White.]" *Id.* White pushed Morrison away, put his swimming trunks back on, and left the bathhouse as he was putting his shirt on. When Davee saw White come out of the bathhouse, he was putting his shirt back on.

As a result of his conduct at the Pool, the State charged Morrison with the following counts: (I) attempted criminal deviate conduct as a Class B felony for attempting to force White to submit to anal intercourse; (II) attempted criminal deviate conduct as a Class B felony for attempting to engage in anal intercourse with White when White was unable to consent to such conduct; (III) sexual battery as a Class D felony for compelling White to submit to unwanted touching; and (IV) sexual battery as a Class D felony for touching White when White was unable to give consent to such touching. At a subsequent jury trial, the State propounded questions to White regarding how it was that he learned about sexual relations between men and women, as well as what he had learned concerning from where babies come. In response, White explained that men and women make babies and that babies come from the mommy's stomach. He also explained that, while his parents did not personally teach him about sex, he learned about it by watching television.

Later, during Morrison's cross-examination of witness Lana Zlovic ("Zlovic"), a juror asked a question about whether White had ever discussed sexual matters with Zlovic. Outside the presence of the jury, Zlovic responded that White had once told her that a guy at work brought him into the bathroom and "did stuff to him," including touching his penis. Tr. at 191. The trial court sustained the State's

objection to the admission of this testimony pursuant to Indiana Evidence Rule 412. In so doing, however, the trial court permitted the parties to "craft a question that deals with [White's] knowledge of other matters that doesn't deal with prior acts." *Id.* at 199.

At the conclusion of the trial, the jury found Morrison guilty of two counts of attempted criminal deviate conduct and two counts of sexual battery, and the trial court entered judgments of conviction on the jury's verdicts. At sentencing, the trial court merged Count II into Count I and Count IV into Count III and sentenced Morrison to the Indiana Department of Correction for a period of fifteen years for the attempted criminal deviate conduct conviction and three years, with three years suspended, for the sexual battery conviction, to be served consecutively. Morrison now appeals his convictions and fifteen-year executed sentence.

### Discussion and Decision

*I. Admission of Evidence: Rule 412.*

■■■■ On appeal, Morrison first argues that the trial court abused its discretion by excluding certain testimony regarding White's prior sexual history under Indiana Evidence Rule 412. In particular, Morrison maintains that the trial court erred when it excluded Zlovic's testimony regarding a prior incident between White and a male coworker, wherein the coworker touched White's penis. The decision to admit or exclude evidence is within the trial court's sound discretion and is afforded great deference on appeal. *Sallee v. State*, 785 N.E.2d 645, 650 (Ind.Ct.App. 2003), *trans. denied, cert. denied,* 540 U.S.

990, 124 S.Ct. 480, 157 L.Ed.2d 385 (2003); *Williams v. State*, 779 N.E.2d 610, 612 (Ind.Ct.App.2002). We will generally not reverse a trial court's exclusion of evidence unless the exclusion is a manifest abuse of discretion resulting in a denial of a fair trial. *Williams*, 779 N.E.2d at 612. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Sallee*, 785 N.E.2d at 650. This court will also find an abuse of discretion when the trial court controls the scope of cross-examination to the extent that a restriction substantially affects the defendant's rights. *Williams*, 779 N.E.2d at 612.

■■ The admission of evidence relating to a victim's past sexual conduct is governed by Indiana Evidence Rule 412. Rule 412 provides that, with very few exceptions, in a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted into evidence. Evid. R. 412. Certain evidence of a victim's past sexual conduct may be admitted, provided that it falls within one of the following exceptions: (1) evidence of the victim's or of a witness's past sexual conduct with the defendant; (2) evidence that shows that some person other than the defendant committed the act upon which the prosecution is founded; (3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or (4) evidence of conviction for a crime to impeach under Rule 609.[3] *Id.* In addition to these enumerated exceptions, a common-law exception has survived the 1994 adoption of the Indiana Rules of Evi-

---

**3.** Indiana Evidence Rule 609 provides, in pertinent part:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime shall be admitted but only if the

crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, criminal confinement or perjury; or (2) a crime involving dishonesty or false statement.

dence. *See Sallee,* 785 N.E.2d at 650. This exception provides that evidence of a prior accusation of rape is admissible if: (1) the victim has admitted that his or her prior accusation of rape is false; or (2) the victim's prior accusation is demonstrably false. *Id.* Prior accusations are demonstrably false where the victim has admitted the falsity of the charges or they have been disproved. *Fugett v. State,* 812 N.E.2d 846, 849 (Ind.Ct.App.2004); *see also Perry v. State,* 622 N.E.2d 975, 980 (Ind.Ct.App.1993).

■ In the present case, testimony that a coworker had touched White's penis does not fall into one of the enumerated exceptions of Rule 412. In addition, such testimony is not encompassed in the common-law exception, as it does not disclose that White admitted that his prior accusation of criminal deviate conduct was false, or that the prior accusation was demonstrably false. *Id.* As such, the trial court did not err by excluding the challenged evidence under Rule 412.

■ Morrison concedes that "the situation in this case does not fall neatly into one of the enumerated exceptions," however, he asserts that "the rape shield protections embodied in Evidence Rule 412 must occasionally give way to the fundamental right to cross-examinations of witnesses." Appellant's Br. at 8. In particular, Morrison contends that the trial court abused its discretion when it excluded Zlovic's testimony because "this testimony directly impacted the prosecution's inference that White was ignorant of sexual matters, especially the possibility of sex between two men." *Id.* at 9. Indiana's Rape Shield Rule, i.e., Indiana Evidence Rule 412, has been held constitutional on its face so long as it does not violate a defendant's right to cross-examination. *Steward v. State,* 636 N.E.2d 143, 148 (Ind.Ct.App.1994), *affirmed by,* 652 N.E.2d 490 (Ind.1995), *reh'g*

*denied.* However, the constitutionality of such a law as applied to preclude particular exculpatory evidence remains subject to examination on a case-by-case basis. *Sallee,* 785 N.E.2d at 651.

■ Initially, we note that, here, the trial court did not impinge upon Morrison's right of confrontation inasmuch as it allowed him to "craft a question that deals with [White's] knowledge of other matters that doesn't deal with prior acts." Tr. at 199. By so doing, the trial court permitted Morrison to explore the extent of White's knowledge regarding sexual relations between individuals, with the sole limitation that Morrison not elicit responses concerning prior acts, including the prior incident with White's coworker. Thus, under these circumstances, Morrison was not denied his right to confront and cross-examine witnesses.

Moreover, in the case at bar, we find Morrison's argument regarding the admissibility of the challenged testimony unpersuasive. To support his contention of error, for example, Morrison relies heavily upon this Court's opinion in *Davis v. State,* 749 N.E.2d 552, 554 (Ind.Ct.App.2001), *trans. denied.* There, the trial court admitted into evidence a physical examination of a twelve-year-old girl, which demonstrated that the girl had not been sexually active on the night of the alleged rape, but had been sexually active on prior occasions. *Id.* at 553. During an offer to prove, which was conducted outside the purview of the jury, the young girl admitted to having sexual intercourse with others at the age of twelve. *Id.* However, the trial court did not allow this latter testimony pursuant to Indiana Evidence Rule 412. On review, the *Davis* court reasoned that the exclusion of such testimony unfairly bolstered the girl's testimony, "inasmuch as the inference arises that, because [the girl] was accurate in stating that sexual

contact had occurred, as disclosed by the physical examination, she also must have been accurate in stating that [the defendant] was the perpetrator of the charged offenses." *Id.* at 555–56. Indeed, because there could have been another possible source for the acts of molestation against the young girl, the *Davis* court held that the trial court had abused its discretion by excluding the challenged evidence from the jury. *Id.* at 556.

*Davis* is distinguishable from the present case. Specifically, here, the challenged evidence does not indicate, in any way, that the coworker—or any other perpetrator for that matter—committed the sexual acts against White in the Pool, as opposed to Morrison. Indeed, Morrison's identity was never an issue at trial. Instead, in his appellant's brief, Morrison asserts solely that the trial court's exclusion of the testimony in dispute gave the jurors the erroneous indication that White was ignorant about sexual relations between men and, thus, White's "allegation of sexual contact with Morrison must be true because in his innocence there was no other way for him to gain the information." Appellant's Br. at 10. However, Morrison's argument continues, the testimony regarding the prior sexual encounter between White and his coworker "would have provided White with the knowledge to either manufacture or confuse the incident." *Id.*

The record does not reveal that White manufactured the sexual incident that occurred at the Pool. Indeed, Davee and Zielska both witnessed Morrison perform oral sex upon White in the Pool. In addition, both witnesses testified that, during the sexual encounter, White appeared to be confused, as if he did not know what was happening to him. Further, the evidence reveals that White did not confuse the incidents in question, as the prior event involved solely the touching of White's penis, while the incident at issue involved oral sex, attempted anal intercourse, and "humping," as well as the touching of his penis.

## II. Sufficiency of Evidence

Morrison also argues that the evidence is insufficient to support his convictions for attempted criminal deviate conduct and sexual battery. Before we address this issue, however, we examine, *sua sponte,* the issue of whether Morrison's convictions for two counts of attempted criminal deviate conduct as Class B felonies and his simultaneous convictions for two counts of sexual battery as Class D felonies violate the Indiana Constitution's prohibition against double jeopardy.

Here, the trial court entered judgments of conviction on the following counts: (I) attempted criminal deviate conduct as a Class B felony for attempting to force White to submit to anal intercourse; (II) attempted criminal deviate conduct as a Class B felony for attempting to engage in anal intercourse with White when White was unable to consent to such conduct; (III) sexual battery as a Class D felony for compelling White to submit to unwanted touching; and (IV) sexual battery as a Class D felony for touching White when White was unable to give consent to such touching. Recognizing that the attempted criminal deviate conduct convictions, as well as the two sexual battery convictions, constituted the same offense for purposes of double jeopardy, the trial court merged Count II into Count I and Count IV into Count III for sentencing purposes.[4]

■■■ However, the trial court's act of merging, without also vacating, the convictions is not sufficient. Indeed, a double jeopardy violation occurs when judgments

---

4. Neither party contests the appropriateness of this merger.

of conviction are entered and cannot be remedied by the "practical effect" of concurrent sentences or by merger after conviction has been entered. *See Jones v. State,* 807 N.E.2d 58, 67–68 (Ind.Ct.App. 2004), *trans. denied; see also Webster v. State,* 708 N.E.2d 610, 616 (Ind.Ct.App. 1999) (holding that "where a defendant is found guilty of both the greater offense and the lesser included offense, the trial court's proper procedure is to vacate the conviction for the lesser included offense and enter a judgment of conviction and sentence only upon the greater offense"), *trans. denied.* Therefore, we remand this cause to the trial court with an order to vacate Morrison's convictions for Counts II and IV. *See, e.g., Spry v. State,* 720 N.E.2d 1167, 1170 (Ind.Ct.App.1999), *trans. denied.*[5]

 We next address whether the evidence is sufficient to sustain Morrison's convictions for Count I, attempted criminal deviate conduct, and Count III, sexual battery. Our standard of review when considering the sufficiency of evidence is well settled. We will not reweigh the evidence or assess the credibility of witnesses. *Robinson v. State,* 699 N.E.2d 1146, 1148 (Ind.1998). Rather, we will only consider the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom. *Id.* We will uphold a conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

Here, to convict Morrison of attempted criminal deviate conduct as charged under Count I, the State was required to prove that he: (1) knowingly or intentionally; (2) took a substantial step toward causing White to perform or submit to deviate sexual conduct, i.e., placing his penis between the buttocks of White; (3) when White was compelled by force or imminent threat of force. Ind.Code § 35–42–4–2; *see also* Appellant's App. at 24. In addition, to convict Morrison of sexual battery, as charged, the State was required to prove that Morrison: (1) acting with the intent to arouse or satisfy his own sexual desires or the sexual desires of another person; (2) touched White; (3) when White was compelled to submit to the touching by force or the imminent threat of force. Ind.Code § 35–42–4–8; *see also* Appellant's App. at 25.

Morrison's sole contention on appeal, regarding the sufficiency of the evidence sustaining both of his convictions, is that the State failed to prove that he compelled White by force or imminent threat of force to submit to the attempted deviate sexual conduct—in the case of the attempted criminal deviate conduct conviction—or to the touching—with respect to the sexual battery conviction. We disagree.

 In the present case, the record reveals that, while Morrison was performing oral sex upon White, White "kept looking around like he really wasn't sure what was going on." Tr. at 62. At one point,

---

**5.** We are aware of the recent decision of *Laux v. State,* 821 N.E.2d 816 (Ind.2005), in which our Supreme Court specifically disapproved of *Wilder v. State,* 813 N.E.2d 788, 793–94 (Ind.Ct.App.2004) "to the extent that *Wilder* indicates that vacating a jury verdict is the appropriate remedy rather than merger and entering a judgment of conviction only on the merged count." 821 N.E.2d at 820, n. 4. Accordingly, we do not read *Wilder* to indi-cate that a jury verdict must be vacated rather than merged before entering a judgment of conviction. Nevertheless, unlike the facts and circumstances of *Laux,* the trial court in the instant case entered judgments of conviction upon each of the jury verdicts, and then "merged" the convictions for sentencing purposes. The merger after judgments of conviction have been entered does not cure the double jeopardy violation.

White put his hands underwater, and Morrison moved his hands out of the way. The evidence also demonstrates that, while White and Morrison were in the bathhouse, Morrison touched White's penis. In response, White retreated to a bathroom stall and locked the door behind him. Morrison climbed underneath the locked door and touched White's buttocks. White then attempted to pull up his swim trunks, but Morrison put his "penis . . . inside [White's] butt." *Id.* at 124. In response, White first pushed Morrison away and, second, opened the door to the bathroom stall and attempted to leave the bathhouse. Morrison, however, pulled White into the shower, removed White's clothes, pushed him onto the floor, and began "humping" him. *Id.* at 128. White unsuccessfully tried to get away from Morrison, but Morrison pushed White on top of himself and continued to "hump [White.]" *Id.* Eventually, White was able to break away from Morrison, put his clothes back on, and leave the bathhouse. This evidence is sufficient to support the conclusion that Morrison compelled White to submit to the attempted deviate conduct and the touching by force or imminent threat of force. *See, e.g., Scott–Gordon v. State,* 579 N.E.2d 602, 604 (Ind.1991) (noting that the force need not be physical or violent, but may be implied from the circumstances). As such, the evidence is sufficient to support Morrison's convictions for attempted criminal deviate conduct[6] and sexual battery.

### III. Sixth Amendment Right To A Jury During Sentencing Phase

Lastly, Morrison maintains that he was denied his Sixth Amendment right to have a jury determine, beyond a reasonable doubt, all facts legally essential to his sentence when the trial court found a certain aggravating circumstance and sentenced him to an executed term of fifteen years. To support this contention, Morrison relies upon the United States Supreme Court's recent opinion of *Blakely v. Washington,* 124 S.Ct. at 2531. There, the Supreme Court held that aggravating factors that are used to increase a defendants sentence beyond a "statutory maximum" must be found by a jury, unless that right is waived or the facts have been admitted by the parties.[7] *Id.* at 2537.

The *Blakely* Court defined "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* (emphasis in original). Put another way, "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional factors, but the maximum he may impose *without* any additional findings." *Id.* (emphasis in original). Accordingly, the *Blakely* Court held that "[o]ther than the fact of a prior conviction,

---

6. With respect to the attempted criminal deviate conduct conviction, we note, too, that the uncorroborated testimony of the victim is sufficient to sustain a criminal conviction. *Scales v. State,* 165 Ind.App. 588, 592, 333 N.E.2d 814, 817 (1975).

7. On January 12, 2005, the United States Supreme Court decided *United States v. Booker,* 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), wherein it invalidated the mandatory application of the Federal Sentencing Guidelines on the basis of the Sixth Amendment. In *Booker,* the Court reaffirmed its holdings in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and, later, in *Blakely* that: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker,* 125 S.Ct. at 756.

any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt, or admitted by the defendant." *Id.* at 2536 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).

■ Morrison argues that the trial court improperly enhanced his sentences for attempted criminal deviate conduct and sexual battery, in violation of his Sixth Amendment right to have a jury determine all factors essential to his sentence. The State counters that Morrison has waived any sentencing error with respect to *Blakely* because he failed to object at the sentencing hearing pursuant to *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. In the alternative, the State asserts that the *Blakely* decision does not implicate Indiana's sentencing procedure. At the outset, we note our disagreement with the State's propositions that: (1) Morrison waived any sentencing error by failing to object on the basis of *Apprendi;* and (2) *Blakely* does not alter Indiana's sentencing scheme. Rather, because *Blakely* redefined the "statutory maximum" for purposes of *Apprendi*—from the prescribed statutory maximum that a defendant could receive *if* the preponderance of certain aggravating and mitigating circumstances, as found by the trial court, weighed in favor of the higher term to the maximum sentence that a trial judge may impose without any additional findings, i.e., the

presumptive or standard sentence—a defendant, such as Morrison, who challenges his enhanced sentence but fails to do so on grounds of *Apprendi* has not waived his argument pursuant to *Blakely*. *See Smylie v. State*, 823 N.E.2d 679, 688 (Ind. 2005). Further, inasmuch as Indianas present sentencing procedure allows a trial court, without the aid of a jury, to enhance a sentence where certain factors are present, it violates a defendants Sixth Amendment right to have a jury determine all facts legally essential to his or her sentence. *See id.* at 685 ("Indianas sentencing scheme runs afoul of the Sixth Amendment not because it mandates a fixed term sentence for each felony, but because it mandates *both* a fixed term and permits judicial discretion in finding aggravating or mitigating circumstances to deviate from the fixed term."). Indiana's sentencing procedure does not violate a defendant's Sixth Amendment rights pursuant to *Blakely*, however, when the trial court imposes an enhanced sentence based upon the jury's verdict.

Here, the trial court sentenced Morrison to an enhanced term of fifteen years for his attempted criminal deviate conduct as a Class B felony conviction [8] and to an enhanced term of three years for his sexual battery as a Class D felony conviction,[9] and ordered that the sentences be served consecutively.[10] In so doing, the trial court found one aggravating circum-

---

8. Indiana Code Section 35–50–2–5 provides, in part, that: "A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances."

9. Indiana Code Section 35–50–2–7 provides, in part, that: "A person who commits a Class D felony shall be imprisoned for a fixed term

of one and one-half (1½) years, with not more than one and one-half (1½) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances."

10. Morrison does not contest his consecutive sentences and, thus, we do not address the appropriateness of the trial court's imposition of consecutive sentences.

stance—i.e., White's mental handicap—and one mitigating circumstance—Morrison's lack of criminal history. Morrison maintains that his enhanced sentence was improper because it is based upon White's mental handicap, which was a fact not determined by the jury or admitted by Morrison. We disagree.

In so doing, we observe that a material element of a crime may not also constitute an aggravating circumstance. *Ellis v. State,* 707 N.E.2d 797, 804 (Ind. 1999). The trial court may, however, enhance a sentence on the basis of the particularized circumstances of the criminal act so long as the court explains why those circumstances warrant the enhancement. *Id.* Here, White's mental capacity, i.e., ability to consent, was not an element of the offenses for which he was convicted, i.e., Counts I and III. Rather, those convictions merely required, in part, proof that Morrison compelled White to submit to certain conduct or touching by force or imminent threat of force. Yet, because the jury found Morrison guilty of Counts II and IV, which required proof of White's mental incapacity, the jury necessarily determined, beyond a reasonable doubt, that Morrison committed the offenses against White, i.e., a person with limited mental capacity. Because the jury found, beyond a reasonable doubt, that White was "so mentally disabled or deficient that consent to the touching [could not] be given," its verdict alone allowed for the enhanced punishment. Appellant's App. at 102; *see also Powell v. State,* 751 N.E.2d 311, 317 (Ind.Ct.App.2001) (holding that an enhanced sentence will be affirmed if it is supported by a legitimate aggravator). As such, Morrison has failed to show that the trial court violated his Sixth Amendment right to have a jury determine his sentence.

For the foregoing reasons, we affirm Morrison's convictions for Count I, attempted criminal deviate conduct, and Count III, sexual battery, as well as his executed fifteen-year sentence. We remand to the trial court with instructions to vacate Morrison's convictions for Count II, attempted criminal deviate conduct, and Count IV, sexual battery.

Affirmed in part and remanded in part.

SULLIVAN, J., and MATHIAS, J., concur.