**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 11 2014, 10:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
Marion County Public Defender
Indianapolis, Indiana

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AJAYI FOLAJUWONI, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1306-CR-556 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1201-FC-6284

**June 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

A jury convicted Ajayi Folajuwoni of Class A misdemeanor voyeurism,[1] Class B misdemeanor battery,[2] and Class B felony attempted deviate conduct.[3] He appeals, raising two issues that we restate as:

I.    Whether the State presented sufficient evidence to support his conviction for attempted criminal deviate conduct; and

II.   Whether the prosecutor's comments during closing argument constituted fundamental error.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In August 2011, Folajuwoni was employed at Wishard Hospital ("Wishard") in Indianapolis, Indiana, in a nursing or care technician capacity. His job title was a "[S]itter," whose duties were to sit with a patient who is suicidal, combative, confused, or a fall risk, in order to make sure the patient does not harm himself or herself, or keep the person from hurting others. *Tr*. at 132. The Sitter may also take vitals, provide fluids, or handle bathing and hygiene if needed; those types of activities are to be reported into an electronic document system. On August 23, 2011, Folajuwoni was assigned to the room in which a patient named A.B. was staying.

Approximately five months later, on January 20, 2012, Officer Nathaniel Wion, an Indiana Department of Correction officer, was stationed in a secured area of Wishard, and

---

[1] *See* Ind. Code § 35-45-4-5.

[2] *See* Ind. Code § 35-42-2-1.

[3] *See* Ind. Code §§ 35-41-5-1, 35-42-4-2.

he found a cell phone on a table in an empty patient room. Guessing that the phone probably belonged to one of the correctional officers who had been on duty before him, Officer Wion contacted those officers but learned the phone did not belong to them. In an attempt to determine the owner of the phone, Officer Wion searched the contacts and photographs on the phone and, while doing so, discovered a video that included an image of a person wearing an identification badge, later determined to belong to Folajuwoni. As the video continued, Officer Wion saw an unidentified woman lying on a hospital bed, who appeared to be a patient. Someone wearing blue hospital gloves removed the woman's diaper and touched her vagina. Her breasts were also exposed in the video.

Believing that this video footage contained criminal content, Officer Wion notified Starr Millick, a nursing supervisor, whose job at Wishard included security issues. Millick asked Officer Wion to meet her in the security room. Meanwhile, Millick contacted the Marion County Sheriff's Department, who sent Sergeant Jan Kistler to Wishard to investigate. As Officer Wion made his way to the security room, he encountered Folajuwoni, who asked Officer Wion if he had Folajuwoni's cell phone. Officer Wion advised Folajuwoni that he had the phone and asked Folajuwoni to follow him to Wishard's security room, which Folajuwoni did. Officer Wion showed what he had found on the phone and, in so doing, discovered a second video of the same unidentified patient. Millick saw a portion of the video and stated it did not reflect Wishard's normal patient care. Folajuwoni, after receiving and waiving his *Miranda* rights, spoke with Sergeant Kistler. The interview was recorded. Folajuwoni admitted the cell phone was his, but did not provide any explanation of why or how the videos, taken approximately five months prior,

were saved on his phone. Folajuwoni signed a consent to search his phone, and a subsequent analysis by the Indiana State Police confirmed the existence of two videos of A.B., both taken on August 23, 2011, one at 9:17 p.m. and the other at 9:30 p.m.

Further investigation revealed that the unconscious patient depicted in the videos was A.B. Millick confirmed that Folajuwoni was on duty the night of August 23, 2011 and that he was assigned to A.B.'s patient room. She also confirmed that A.B. was sedated at the time. Subsequently, in January 2013, Sherriff's Department Investigator Sergeant Wayne Sharp and another officer, along with a victim's advocate, met with A.B. They did not show the videos to A.B. but told her what they had discovered. She was distraught, upset, and physically ill by this information. She confirmed that she was in the hospital on August 23, 2011, and that she did not know Folajuwoni and had not given him permission to touch or film her.

By amended information, the State charged Folajuwoni in February 2012 with Class B felony criminal deviate conduct, Class A misdemeanor voyeurism, Class B misdemeanor battery, and Class B felony attempted criminal deviate conduct. Folajuwoni filed a motion to suppress the evidence from the cell phone, but the trial court denied the motion. At trial, A.B. testified that she had been a patient at Wishard for a period of days that included August 23, 2011, and that she was unconscious for a portion of her hospital stay. She confirmed that the body parts in the videos were her own. Millick testified that the conduct in the videos did not reflect normal Wishard patient care. Her testimony included statements that a Sitter does not assess skin, and private areas on a patient's body are never filmed. *Tr.* at 145, 150. She stated that a patient's breasts normally should not be exposed

and should have been under a sheet. She explained that any hygiene tasks, such as changing a diaper, are required to be recorded by the caretaker in Wishard's electronic records system. *Id*. at 132-33. A.B.'s chart did not reflect a diaper change had occurred on the time and date in question. *Id*. at 154. Wishard's sexual assault nurse examiner, Barbra Bachmeier, also testified, identifying the female anatomical parts reflected in the videos and stating that both the labia majora and labia minora were being touched in the videos. She stated genitalia examinations are not filmed.

Following a jury trial, Folajuwoni was convicted of voyeurism, battery, and attempted criminal deviate conduct, as charged. Folajuwoni now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Sufficiency of Evidence

Folajuwoni challenges the sufficiency of the evidence for his conviction for attempted criminal deviate conduct. Our standard of review when considering the sufficiency of evidence is well settled. We will not reweigh the evidence or assess the credibility of witnesses. *Morrison v. State*, 824 N.E.2d 734, 742 (Ind. Ct. App. 2005). Rather, we will only consider the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom. *Id.* We will uphold a conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

To prove that a defendant attempted to commit an offense, the State is required to prove that he or she acted with the culpability required for the commission of the crime

5

and that he engaged in conduct constituting a substantial step towards the commission of that crime. Ind. Code § 35-41-5-1. In this case, Folajuwoni was charged with attempting to commit criminal deviate misconduct in violation of Indiana Code section 35-42-4-2, by knowingly causing A.B. to perform or submit to deviate sexual conduct when A.B. was unaware the conduct was occurring. The State alleged that Folajuwoni did so by removing A.B.'s clothing and/or positioning her body so that her sexual organ was accessible to be penetrated by the finger of Folajuwoni while A.B. was unaware the conduct was occurring. *Appellant's App.* at 150. The element of intent may be proven by circumstantial evidence alone, and it is well established that knowledge and intent may be inferred from the facts and circumstances of each case. *Lykins v. State*, 726 N.E.2d 1265, 1270-71 (Ind. Ct. App. 2000). The State is not required to prove intent by direct and positive evidence. *Id.*

Folajuwoni's assertion on appeal is that there was insufficient evidence that his intent was sexual in nature or that he intended to penetrate A.B.'s vagina, maintaining that he "was convicted on speculation regarding his intent when he touched her genitals." *Appellant's Br.* at 13. He asserts that there was "NO evidence" supporting sexual intent; rather, he claims, the only evidence presented was that he "legitimately touched A.B. . . . as part of his duties to check her diaper and change it if he finds moisture." *Id.* at 15. We disagree and find that the State sufficiently proved the elements of the charged offense.

At trial, A.B. identified the body parts in the videos as her own. In the videos, Folajuwoni removed A.B.'s diaper and manipulated her vagina with the fingers of one hand, while holding his phone and filming her with his phone in the other hand. He touched her labia majora, a sexual organ. A.B. was sedated and unaware of the conduct. She had

6

never given Folajuwoni permission to touch her. Hospital personnel testified that what was depicted in the videos was not normal Wishard procedure, as Sitters do not handle or assess skin, do not film genitalia, and patient breasts are not exposed. Any diaper changes are documented, and Millick did not recall any documentation of a diaper change as having occurred during Folajuwoni's care of A.B. The videos were kept on Folajuwoni's phone for over five months, having been taken in August 2011 and discovered in January 2012. The evidence presented supports a rational inference that the video filming did not occur accidentally, or for any legitimate purpose, and, instead, was intentionally made and saved by Folajuwoni. Although Folajuwoni claims that he was performing a diaper check and touched her to determine whether there was wetness present, this is merely a request to reweigh the evidence, which we cannot do. *Morrison*, 824 N.E.2d at 742. The State presented sufficient evidence that Folajuwoni committed attempted criminal deviate conduct.

## II. Prosecutorial Misconduct

Folajuwoni claims that the State committed prosecutorial misconduct during closing argument. When reviewing a claim of prosecutorial misconduct, we must first consider whether the prosecutor engaged in misconduct. *Williams v. State*, 724 N.E.2d 1070, 1080 (Ind. 2000). We then consider whether the alleged misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Id*. In judging the propriety of the prosecutor's remarks, we consider the statement in the context of the argument as whole. *Hand v. State*, 863 N.E.2d 386, 394 (Ind. Ct. App. 2007). A prosecutor is entitled to respond to allegations and inferences raised by the defense even if the

7

prosecutor's response would otherwise be objectionable. *Id*. "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id.*

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. *Hand*, 863 N.E.2d at 394 (citing *Dumas v. State*, 803 N.E.2d 1113, 1117 (Ind. 2004)). If the party is not satisfied with the admonishment, then he or she should move for mistrial. *Id.* Failure to request an admonishment or to move for mistrial results in waiver. *Id.* Where a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim. *Id*. More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Id*. (citing *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002)). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Id*. "It is error that makes 'a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm.'" *Id*. (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)).

Here, during the State's closing argument, defense counsel objected once, asserting that the prosecutor mischaracterized the evidence regarding the exact genitalia depicted in the video. *Tr*. at 208. Later, during the State's rebuttal argument, defense counsel objected about the use of the word "penetrate." *Id*. at 222. Folajuwoni did not move for

8

admonishment or ask the trial court to declare a mistrial with regard to either of those two remarks. On appeal, Folajuwoni does not challenge those two remarks; instead, he challenges a number of others that the prosecutor made during closing argument, but to which he did not object at trial. Under these circumstances, Folajuwoni is deemed to have waived his claimed instances of prosecutorial misconduct, and he must show that the alleged misconduct resulted in fundamental error in order to succeed on appeal. *Hand*, 863 N.E.2d at 394.

In his brief, Folajuwoni refers to seven different statements made by the prosecutor. The gist of his argument is that the cumulative effect of the statements was so egregious and prejudicial that he was denied his federal and state constitutional right to a fair trial. We will examine the questioned statements in turn.

First, Folajuwoni challenges the prosecutor's line of argument in which he asserted that because the evidence, in particular the video, established that Folajuwoni had committed voyeurism, battery, and had taken a substantial step toward penetration thereby committing attempted criminal deviate conduct, the only thing left for the defense attorney to do was argue "the no penetration defense." *Tr.* at 209-10. That is, given that at least two, if not three, of the charged offenses had been proven, all Folajuwoni could do was "get the best lawyer he can and argue this wasn't really penetration." *Id.* at 209. On appeal, Folajuwoni contends this latter statement disparaged Folajuwoni's right to counsel. We

disagree, and do not find that the prosecutor's statement disparaged the defense attorney nor constituted prosecutorial misconduct.[4]

Next, Folajuwoni takes issue with the prosecutor's statements regarding the thirteen minutes that elapsed between the two videos. The prosecutor stated, "[W]e don't know what happened in the 13 minutes between the time he was recording her breasts and then when he turned the camera on again and started doing this," referring to him touching A.B.'s vagina. *Id*. at 210. Folajuwoni asserts on appeal that the prosecutor's statement improperly asks the jury to speculate beyond the evidence admitted at trial, suggesting that the prosecutor may not argue facts not in evidence. *Appellant's Br*. at 17. Again, we disagree with Folajuwoni's characterization. The evidence at trial established thirteen minutes elapsed from the end of one video to the start of the next one. Indeed, a juror asked a question of a detective about the time gap. The State was thus not arguing about facts not in evidence. It is a true and accurate statement that no one knows what happened in that time. We do not find that this amounted to prosecutorial misconduct nor fundamental error.

Folajuwoni next asserts that the prosecutor committed two "major violations" when he made the following two statements: "You need to stand up for A.B. because she can't stand up for herself[,]" and when he stated, "Don't let the defense attorney bamboozle you into thinking this is just a misdemeanor." *Tr*. at 211. Folajuwoni takes issues with the former statement, arguing that it was an appeal for sympathy and presented A.B. as a crime

---

[4] Although the prosecutor's comments did not rise to the level of misconduct, we do not condone such statements under the guise of zealous advocacy. Counsel is advised to avoid statements of a similar ilk in the future.

victim. As the State argues in its brief, the trial court instructed the jury to disregard sympathy when reaching its verdict. We find that, even if any impropriety occurred by virtue of the statement, it was cured by jury instructions. With regard to the "bamboozle" statement, Folajuwoni does not explain in what way it constituted misconduct other than citing to one case[5] and stating that the comment disparaged defense counsel. Folajuwoni's failure to elaborate or provide cogent argument results in waiver. Ind. Appellate Rule 46(A)(8)(a); *Casady v. State*, 934 N.E.2d 1181, 1191 (Ind. Ct. App. 2010), *trans. denied*. Furthermore, as the State notes, defense counsel in his own closing argument stated that the prosecutor "used my word that I was gonna use – bamboozle," and thereby insinuated that he had intended to similarly argue that the State was bamboozling the jury. *Tr*. at 213. Regardless, we do not find that the State's "bamboozle" statement was egregious or in any way denied Folajuwoni a fair trial.

Folajuwoni next mentions two "less egregious" statements made by the prosecutor. The first concerns when the prosecutor remarked that Folajuwoni's statement of "you know that wasn't me" to his supervisor "didn't work very well" once law enforcement reviewed the videos. *Id*. at 209. In his appeal, Folajuwoni appears to claim that the prosecutor misrepresented his statement, and what Folajuwoni meant when he made that statement to his supervisor was, "I am not that kind of person[.]" *Appellant's Br*. at 18. This, however,

---

[5] As support for his "bamboozle" argument, Folajuwoni cites to *Scherer v. State*, 563 N.E.2d 584 (Ind. 1990), where, he claims, the court held it was improper for the prosecutor to tell the jury that the defense attorney "is trying to snow you[.]" *Appellant's Br*. at 17. Our review of *Scherer* reveals that, contrary to Folajuwoni's assertion, the *Scherer* court held that the prosecutor's "simple statements" referring to "a snow job" did not amount to fundamental error. *Scherer*, 564 N.E.2d at 586-87.

is not what Folajuwoni stated. We do not agree that the prosecutor's remark mischaracterized evidence, and we reject Folajuwoni's argument to the contrary.

The other "less egregious" statement with which Folajuwoni takes issue concerns a line of argument by the prosecutor that referenced a movie that had appeared some years ago in theaters. The prosecutor told the jury that Folajuwoni's conduct made him think of a movie, which he identified by name, in which a female character was in a coma and during that time the "med tech" sold her for sex; the female woke up during the abuse and killed the man, and the prosecutor said A.B. would have been justified to do the same if she had awoken. *Id*. at 211. In his appeal, Folajuwoni claims that this argument characterized what Folajuwoni did as "equivalent to the patient abuse portrayed in [the] violent Hollywood movie." *Appellant's Br*. at 18. While his position is not without merit, Folajuwoni has not persuaded us that the alleged misconduct prevented him from receiving a fair trial or otherwise rose to the level of fundamental error.

Lastly, Folajuwoni raises a misconduct argument concerning remarks the prosecutor made in reference to a barely-audible voice that was speaking at the end of one of the videos. Specifically, the prosecutor's comment in closing argument suggested that the voice was that of some other person who frightened Folajuwoni into not completing his intended act, and on appeal, Folajuwoni maintains this comment by the prosecutor "prejudiced [him] more than the others combined[.]" *Id*. He claims the prosecutor misrepresented the evidence, because "the voice was clearly Folajuwoni's commenting on A.B.'s lack of urination as he checked her diaper." *Id*. We disagree with the suggestion that the voice "clearly" was Folajuwoni's. The jury saw the video and heard the voice, and

12

the attorneys were entitled to comment in closing argument on that evidence. We find no error occurred.

Fundamental error is a narrow exception intended to place a heavy burden on the defendant. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). It requires the defendant to establish that the misconduct made a fair trial impossible or constituted clearly blatant violations of basic and elementary principles of due process or that the misconduct presented an undeniable and substantial potential for harm. *Id.* (quotations omitted). We find that Folajuwoni failed to meet that burden.

Affirmed.

MAY, J., and BAILEY, J., concur.