## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 21 2019, 8:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald J. Frew
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lawrence M. Davis, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 21, 2019 <br><br> Court of Appeals Case No. 18A-CR-1433 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable John Surbeck, Jr., Judge <br><br> Trial Court Cause Nos. 02D04-1710-FA-3 & 02D06-1710-FA-3 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1]    Appellant-Defendant, Lawrence Davis (Davis), appeals his conviction and sentence for three Counts of child molesting as Class A felonies, Ind. Code § 35-42-4-3(a)(1); two Counts of sexual misconduct with a minor as Class B felonies, I.C. § 35-42-4-9(a)(l); two Counts of sexual misconduct with a minor as Level 4 felonies, I.C. § 35-42-4-9(a); one Count of child molesting, a Class C felony, I.C. § 35-42-4-3(b); one Count of sexual misconduct with a minor, a Class C felony; I.C. § 35-42-4-9(b)(l); one Count of sexual misconduct with a minor, a Level 5 felony; I.C. § 35-42-4-9(a); two Counts of child seduction as Level 5 felonies, I.C. § 35-42-4-7(m), (q)(2); one Count of child seduction as a Level 6 felony, I.C. § 35-42-4-7(m), (q)(1); one Count of dissemination of matter harmful to minors, a Class D felony, I.C. § 35-49-3-3(a)(1); one Count of dissemination of matter harmful to minors, a Level 6 felony, I.C. § 35-49-3-3(a)(1); one Count of contributing to the delinquency of a minor, a Class A misdemeanor, I.C. § 35-46-1-8(a); and one Count of possession of child pornography, a Level 6 felony, I.C. § 35-42-4-4(c).

[2]    We affirm.

# ISSUES

[3]    Davis presents three issues on appeal, which we restate as the following:

    (1)  Whether the State proved the offenses beyond a reasonable doubt;

    (2)  Whether the trial court abused its discretion when it excluded certain evidence;

(3) Whether Davis' sentence is inappropriate in light of the nature of his offenses and his character.

# FACTS AND PROCEDURAL HISTORY

Child was born in February 1999. Mother began dating Davis when Child was approximately five years old, and Mother married Davis shortly thereafter. Child had no contact with her biological father. Davis and Mother had a son together. Shortly after their son's birth, Mother had an accident which disabled her and rendered her largely immobile throughout Child's childhood. Davis was over the age of twenty-one years old the entire period he was a part of Child's life. The family moved frequently throughout Child's childhood, although, apart from a brief stint in Texas and a few months spent with Davis' son in a neighboring county after their return from Texas, the family lived in Fort Wayne, Indiana.

Beginning when Child was five years old and continuing throughout her childhood, Davis showed Child pornography and touched her vagina with his hand. During one specific incident that occurred when Child was in first grade, Davis touched Child's vagina with his hand and with his mouth. Davis told Child, who did not understand what was occurring, that others would be jealous if they knew what they were doing. Davis made it seem to Child that his conduct was a normal part of family life and that everyone did it. Davis used his hand and mouth on Child's vagina for a number of years. Davis also touched Child's chest with his hand and had Child touch his penis with her hand.

[6] Starting when Child was in third or fourth grade, Davis began inserting his fingers into Child's vagina. By this time, Child was aware that Davis' conduct was not a normal part of family life. Child resisted Davis. In response, Davis would hold Child down and forcefully ram his fingers into her vagina, causing her pain. This conduct continued for years, and Child blamed Davis' conduct for the early onset of her menses.

[7] By the time Child was in seventh or eighth grade, Davis was supplying her with cigarettes and alcohol. Around this time, Child was living at her Grandmother's home where tents were set up in the back yard. Child began sleeping in the tents in the hope of avoiding Davis' sexual attention. One evening after Child had become intoxicated on alcohol Davis had supplied to her, Davis took Child into a tent and inserted his penis into her vagina for the first time. As a result of this incident, Child "snapped" mentally. (Transcript Vol. II, p. 243). Child attempted suicide and was hospitalized at Parkview Behavioral Health (PBH). Child wanted assistance from her mental health providers, but she did not want to report Davis, as he had threatened to harm her, her friends, and her family if she disclosed his abuse. Davis had also told Child that no one would believe her and that her life would be ruined. As a result, Child did not inform the staff at PBH that Davis was molesting her. Instead, she fabricated a report that she had been assaulted by a group of people in a park. After this was reported to law enforcement, Child recanted her report.

[8] Around this period, the family was living at the home of Child's maternal grandmother (Grandmother). Early one morning, Grandmother was out of bed to use the restroom. She heard a noise in Child's bedroom and looked in to investigate. Grandmother observed Davis under the covers with Child. This greatly shocked Grandmother, who immediately reported it to Mother. Mother assured Grandmother that nothing untoward had occurred. After Grandmother observed Davis in bed with Child on a second occasion, Davis encouraged Mother to move because Grandmother kept discussing it. The family moved from Grandmother's home shortly thereafter.

[9] Throughout Child's childhood, Davis did audio/visual work for a religious ministry and concert hall, Come2Go (C2G), in Fort Wayne. Davis had a key to the premises and the code to disarm the building's alarm system. Child would accompany Davis to C2G, and he taught her the trade. On one occasion when Child was between the age of fourteen and fifteen, Davis took Child to C2G and provided Child with alcohol. Davis had previously showed Child pornography depicting girls eating feces and engaging in sexual activity with animals, telling Child that he wished to perform those activities with her. Davis took Child into the boy's restroom at C2G, inserted his finger or penis into her anus, inserted his penis into her vagina, and had Child eat feces.

[10] When Child was thirteen years old, Davis assisted her in procuring birth control. Davis continued to insert his penis into Child's vagina until after she turned sixteen years old. Late in 2016, Mother and Davis separated. Davis moved out of the home and into a trailer where he lived with a woman who

had four young children. Child became concerned that Davis would molest the children, so she disclosed the offenses to Mother. Mother did not believe Child initially. On March 27, 2017, Child reported the offenses to law enforcement, and an investigation was launched. Mother allowed Davis to move back into the family home. Child moved out and did not speak to her Mother for months.

[11] After Child had disclosed the offenses, a minister at C2G found hundreds of pornographic videos on a computer used by Davis as part of his audio/visual work. Some of the videos depicted sexual activity involving infants and children. The minister did not report his discovery to law enforcement and erased the pornography so that others would not be exposed to it. Thereafter, the minister made a habit of monitoring the files of the C2G computers. In October 2017, the minister found a Dropbox[1] folder on the same computer with folders entitled "me likey" and "young." (Tr. Vol. IV, p. 7). The Dropbox folders contained thirty-two videos and thirty-three images depicting sexual activity, including sexual intercourse, involving children. The minister alerted the authorities. Investigation later revealed that the Dropbox account was registered to an email address used by Davis and that on October 10, 2017, when the child pornography files had been accessed, Davis had also opened password-protected files that contained his pay stubs.

---

[1] Dropbox is an online location which can be used to store electronic files.

[12] On October 25, 2017, the State filed an Information, charging Davis with seventeen Counts, including four Counts of child molesting as Class A felonies, one Count of child molesting as a Class C felony, four Counts of Class B/Level 4 felony sexual misconduct with a minor, two Counts of Class C/Level 5 felony sexual misconduct with a minor, two Counts of Level 5 and one Count of Level 6 felony child seduction, two Counts of Class D felony/Level 6 dissemination of materials harmful to minors, and one Count of Class A misdemeanor contributing to a delinquency of a minor. On March 12, 2018, the State filed an amended Information, charging Davis with an additional Count of Level 6 felony possession of child pornography.

[13] While Davis was being held pending trial, he placed two telephone calls to Mother from the Allen County Jail which were recorded. Davis stressed to Mother the importance of forgiveness and urged her to convince Child to drop the charges against him. Davis told Mother that if Child dropped the charges, he would pay her child support and help her financially. Davis also told Mother that if Child did not drop the charges, he had witnesses available to testify that Mother had provided Child with alcohol and cigarettes, which Mother took to be a threat.

[14] On April 17, 2018, the trial court convened Davis' jury trial. During Davis' cross-examination of Child, he sought to introduce evidence which he contended showed that Child had previously made false accusations of rape against one of her former boyfriends, D.M. The trial court held a hearing outside of the presence of the jury at which Child testified that while engaging

in sexual activity involving consensual choking, D.M. choked her beyond her consent. Child had reported this later as part of an application for a protective order against D.M. Child confirmed at the hearing during Davis' jury trial that D.M. had choked her beyond her consent. D.M. testified that he had never forced any sexual activity on Child. The trial court ruled that the proposed testimony was inadmissible pursuant to Indiana's Rape Shield law. Child testified that Grandmother had once caught Davis performing oral sex on Child. In her testimony, Grandmother did not describe observing any overt sex acts committed by Davis on Child, and she stated that she would have remembered if she had observed any such acts. At the conclusion of the three-day trial, the jury found Davis not-guilty of Count II, Class A felony child molesting, and guilty on all other counts.

[15] On May 11, 2018, the trial court held Davis' sentencing hearing. Child submitted a statement to the trial court in which she detailed the effects of the offenses upon her. Child remembered thinking as a girl that Davis' offenses were her fault and feeling "low, ugly, filthy, helpless, fearful, sad." (Sentencing Tr. p. 15). After Davis began molesting her, Child felt isolated from other children and unable to share in their innocent pursuits. Child described how Davis forced her to watch child pornography and told her that he wanted to do those things to her. Child had attempted suicide three times and had sought escape through sex, drugs, and alcohol. Child expressed fear that Davis would molest other children and requested that Davis receive the maximum sentence allowable.

[16] The trial court found as mitigating factors that Davis had no significant prior criminal history, he had worked and supported the family, and that he had presented several character witnesses. The trial court found as aggravating circumstances that Davis molested Child on a regular basis beginning at the age of five and continued to do so for approximately twelve years. The trial court also found that the nature of the sexual activity to which Davis had subjected Child was "comprehensive." (Appellant's Public App. Vol. II, p. 87). The trial court sentenced Davis to forty years with the Department of Correction for each of his three Class A felony child molesting convictions, to be served consecutively. The trial court sentenced Davis to ten years for each of his Class B felony convictions, six years for each of his Level 4 felony convictions, four years for each of his Class C felony convictions, three years for each of his Level 5 felony convictions, one year for each of his Class D and Level 6 felony convictions, and to one year for his Class A misdemeanor conviction, all to be served concurrently. The trial court sentenced Davis to two and one-half years for the Level 6 felony child pornography conviction, to be served consecutively, for an aggregate sentence of 122 and one-half years. The trial court found that two Counts of Class A felony child molesting, Counts I and III, had occurred before Child turned twelve years old and that, as a result, Davis was a credit restricted felon as to those Counts.

[17] Davis now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

#### A. *Standard of Review*

[18] Davis argues that the State failed to prove the offenses beyond a reasonable doubt. It is well-settled that upon review of the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of witnesses, and we will affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Prickett v. State*, 856 N.E.2d 1203, 1206 (Ind. 2006). We consider only the probative evidence and reasonable inferences that support the verdict. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). A conviction for child molesting may rest solely upon the uncorroborated testimony of the victim. *Rose v. State*, 36 N.E.3d 1055, 1061 (Ind. Ct. App. 2015).

#### B. *Counts I, III, V*

[19] Davis' first challenge to the sufficiency of the evidence is that the State failed to prove that the offenses alleged in Counts I and III occurred in Allen County when Child was under the age of fourteen. Specifically, Davis contends that Child's "age in relation to the accusations against [Davis] was at times unclear" and that Child testified that Davis also assaulted her outside of Allen County. (Appellant's Br. p. 19). In Count I of the Information, the State charged Davis with placing his mouth on Child's sex organ when she was under the age of fourteen between February 19, 2004, and February 18, 2013, and in Count III,

the State charged Davis with penetrating Child's sex organ or anus with an object when she was under the age of fourteen between February 19, 2004, and February 18, 2013. Child testified that Davis began placing his mouth on her vagina when she was in first grade when the family was living on Hale Street. Child testified that the family lived on Hale Street when she was five years old and that they stayed there for two years. Child also testified that Davis began inserting his fingers into her vagina when she was in third or fourth grade and living near what would be the site of the TinCaps Stadium. Child further testified that, apart from the short periods of time the family spent in Texas in 2014 and at Davis' son's house in a neighboring county after they returned from Texas, all of the offenses took place in Fort Wayne, Allen County, Indiana. We find that this evidence was sufficient to prove Child's age and the location of the offenses as charged in Counts I and III of the Information.

[20] In Count V of the Information, the State charged Davis with performing or submitting to deviate sexual conduct with Child when she was at least fourteen years old but under sixteen years old, between February 19, 2013, and June 30, 2014. At the time Davis committed the offenses, deviate sexual conduct was defined as either (1) an act involving either a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object. I.C. § 35-41-1-9 (1984) (repealed as of July 1, 2014, and recodified as "other sexual conduct" at I.C. § 35-31.5-2-221.5). Child testified that when she was fourteen or fifteen years old, Davis took her into the boy's bathroom at C2G, which was located in Fort Wayne, and inserted either

his penis or his finger into her anus. We find that this evidence established beyond a reasonable doubt that Davis committed the act of sexual misconduct with a minor as alleged in Count V.

### C. *Incredible Dubiosity*

[21] Davis also invokes the "incredible dubiosity" rule to challenge the evidence supporting his convictions. This rule allows the appellate court to impinge on the jury's function to judge the credibility of a witness, only when

> confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare, and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. Cases where we have found testimony inherently improbable have involved situations either where the facts as alleged could not have happened as described by the victim and be consistent with the laws of nature or human experience, or where the witness was so equivocal about the act charged that her uncorroborated and coerced testimony was riddled with doubt about its trustworthiness.

*Carter v. State*, 31 N.E.3d 17, 30-31 (Ind. Ct. App. 2015) (quotations and citations omitted), *trans. denied*.

[22] Here, Davis argues that Child's testimony is incredibly dubious because there were no eyewitnesses and no physical evidence of the offenses. Davis also points to inconsistencies between Grandmother's and Child's testimony about one of the occasions Grandmother caught Davis in bed with Child, and he reminds us that Child had mental health issues and fabricated a story of gang

rape when she was treated at PBH. However, our review of the record does not convince us that Child's testimony was so inherently improbable that no reasonable person could believe it. To the contrary, Child testified clearly and unequivocally regarding the specific acts Davis perpetrated against her, acts which, as the body of case law surrounding child molesting convictions unfortunately demonstrates, were not outside the realm of human experience. Davis presented all of these arguments to the jury, who chose to believe Child despite the relative lack of corroborating evidence. We decline Davis' invitation to invade the realm of the jury because we conclude from the evidence that a reasonable fact-finder could have believed that Davis was guilty beyond a reasonable doubt. *See id.*

## II. *Exclusion of D.M.'s Testimony*

[23] Davis next contends that the trial court abused its discretion and he was denied a fair trial when the trial court excluded testimony which he argues would have shown that Child had falsely accused one of her former boyfriends, D.M., of rape. As a general matter, the decision to admit or exclude evidence is within the trial court's sound discretion and is afforded great deference on appeal. *Williams v. State*, 779 N.E.2d 610, 612 (Ind. Ct. App. 2002) (reviewing the trial court's exclusion of evidence of a prior accusation of sexual misconduct). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*. This court will find an abuse of discretion when the trial court controls the scope of cross-

examination to the extent that the restriction substantially affects the defendant's rights. *Id.*

[24] Indiana Evidence Rule 412, known as the Rape Shield Rule, generally prohibits the admission of evidence of a sex crime victim's sexual history at the trial of the accused. The purpose of Rule 412 is to prevent the victim from being put on trial and to prevent the trial from straying "from the central issues of guilt or innocence of the defendant into a full-scale investigation of charges made by the prosecutrix against other persons." *State v. Walton*, 715 N.E.2d 824, 826 (Ind. 1999). However, a common law exception to Rule 412 exists for evidence that a victim has made previous false accusations of rape. *Id.* at 825-26. Our supreme court has reasoned that a false accusation of rape is not sexual conduct for purposes of the Rape Shield Rule. *Id.* at 826. The exception may apply if (1) the victim admits that he or she made a prior accusation of rape that was false; or (2) the accusation is demonstrably false. *Id.* at 828. When a trial court has made a ruling regarding the sufficiency of the evidentiary foundation for the admission of evidence of false accusations of rape, we review that ruling and any factual determinations made by the trial court with the same deference on appeal as any other factual finding. *Id.*

[25] Here, at the evidentiary hearing held outside the presence of the jury, Child testified that as part of an application for a protective order, she had reported that D.M. had choked her beyond her consent during a sexual encounter. Davis, the proponent of the evidence, did not offer the protective order application into evidence, and it is unclear from our reading of the record

whether Child ever used the word "rape" to describe this event. Moreover, contrary to Davis' contention on appeal, Child did not recant her allegation at the hearing. Thus, the proffered testimony would only have been admissible if it were shown that Child's allegation was demonstrably false. *See id*. Davis does not develop any argument on appeal showing that Child's accusations were demonstrably false. Indeed, at the evidentiary hearing D.M. denied that he had forced any sexual conduct on Child, but the trial court apparently resolved this conflict of the evidence in favor of Child. We will not second-guess that factual determination. *Id*. Because Child did not recant her allegation and Davis failed to show that her allegation was demonstrably false, the trial court correctly concluded that the proffered evidence was inadmissible under Rule 412.

### III. *Sentence*

[26] Davis contends that his sentence is inappropriate in light of the nature of the offenses and his character. The Indiana Constitution and Indiana Appellate Rule 7(B) permit an appellate court to revise a sentence if, after due consideration of the trial court's decision, the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018). "The principal role of such review is to attempt to leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant bears the burden to persuade the reviewing court that the sentence imposed is inappropriate. *Robinson*, 91 N.E.3d at 577.

[27] Here, Davis was convicted of sixteen felonies and one class A misdemeanor. The trial court imposed forty-year, consecutive sentences for the three Class A felony child molesting convictions and a two-and-one-half-year sentence for the Level 6 child pornography conviction, to be served consecutively to the Class A felony sentences. The sentencing range for a Class A felony is between twenty and fifty years, with the advisory sentence being thirty years. I.C. § 35-50-2-4(a). The sentencing range for a Level 6 felony is between one-half and two and one-half years, with the advisory sentence being one year. I.C. § 35-50-2-7(b). Thus, the trial court imposed enhanced, consecutive sentences for the Class A felony child molesting convictions and the maximum sentence for the child pornography conviction. The trial court imposed advisory sentences for all of Davis' other convictions and ordered them to be served concurrently.

[28] Regarding the nature of his offenses, we agree with Davis' assessment that they are "severe and reprehensible." (Appellant's Br. p. 24). Davis began molesting Child when she was just five years old, which was significantly younger than the age necessary to prove the Class A felony child molesting convictions. Davis was in a position of trust with Child, who had no contact with her biological father and whose mother was largely immobile. Child described a childhood that was awash in pornography, alcohol, and molestation. Davis subjected Child to offenses which escalated in severity over the twelve years of his molestation, from external contact to insertion of his finger into her vagina to sexual intercourse. At times, Davis employed force to ensure Child's compliance, and he caused her physical pain. While Davis was charged with

seventeen incidents of molestation, there was evidence in the record that these acts occurred on many more occasions than those for which he was charged. During one particularly despicable incident, Davis had Child consume feces. Child described being robbed of her childhood, and she has already attempted suicide three times due to the emotional and psychological impact of Davis' offenses.

[29] In addition, the child pornography contained in the record, which was just a sampling of what Davis possessed, included one image of what appears to be the exhibition of the distended genitalia of a female infant. Davis also possessed images of children being subjected to being bound, having large objects forced into their bodies, and full-scale intercourse with adults. Given the extreme youth at which the offenses against Child began, Davis' position of trust over Child, the escalating, comprehensive nature of the molestation he perpetrated against Child which continued over a period of almost twelve years, and the depravity of his conduct, we see nothing inappropriate about the 122 and one-half-year sentence imposed by the trial court.

[30] Regarding Davis' character, we acknowledge, as did the trial court, that Davis has a relative lack of criminal record, was employed, and had friends who attested to his positive character traits. However, we note that Davis manipulated Child into not disclosing his molestation, first with his love and later with threats and assurances that no one would believe her if she reported, none of which reflects well upon his character. In addition, while awaiting trial, Davis attempted to convince Mother to have Child discontinue her

cooperation in his prosecution. When his promises of money did not convince Mother, Davis threatened to "take [Mother] down" with him. (State's Exh. 21, Call 2). Davis' attempt to subvert the judicial process also reflects poorly on his character. The trial court took the positive aspects of Davis' character into account when fashioning its sentence, which consisted largely of advisory, concurrent sentences. Davis has failed to persuade us that his sentence is inappropriate given his character, and so we decline to alter the trial court's sentence.[2] *See Robinson*, 91 N.E.3d at 577.

## CONCLUSION

Based on the foregoing, we conclude that the State proved the offenses beyond a reasonable doubt and that the trial court did not abuse its discretion when it excluded Davis' inadmissible evidence. In addition, we find nothing inappropriate about Davis' sentence, which reflects the nature of his offenses and his character.

Affirmed.

Kirsch, J. and Robb, J. concur

---

[2] Davis also briefly argues, without citation to authority, that his designation as a credit restricted felon as to Counts I and III is inappropriate because "there is no specific finding of fact that the victim of Counts I and III was less than 12." (Appellant's Br. p. 26). However, in its sentencing statement, the trial court found that Child was "under the age of twelve" when the offenses enumerated in Counts I and III occurred, and so this portion of Davis' argument fails on its face. (Appellant's Public App. Vol. II, p. 88).