Eugene CANDLER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A05–0502–CR–90.

Court of Appeals of Indiana.

Dec. 5, 2005.

Rehearing Denied Feb. 17, 2006.

Jeffrey L. Sanford, South Bend, for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Eugene Candler appeals his convictions for child molesting. Specifically, he contends that the trial court erred by excluding evidence that the victim had made a false allegation of sexual misconduct against her stepfather and by allowing two witnesses to testify at trial that K.B. had told them about the molestations. Because Candler failed to prove that the victim's allegations were false or demonstrably false and because the witnesses' testimony is relevant, the trial court did not err in its exclusion and admission of this evidence. We therefore affirm.

### Facts and Procedural History

K.B. and her mother lived with Willie Berry from the time of K.B.'s birth on March 11, 1985, until she was about three years old. Candler lived across the street from Berry. After moving out, K.B. and her mother frequently visited Berry, and Candler sometimes stopped by during these visits. During one of the visits in 1990—when K.B. was about five years old—Candler invited K.B. over to his house to play board games while her mother visited Berry. Candler took K.B. to his bedroom and instructed her to stand in front of the mirror and to remove her clothes. Candler then pointed to K.B.'s various body parts, including her vagina and breasts, and told her what they were used for. Candler specifically stated that K.B.'s vagina "would be used one day to do things that we couldn't do right now." Appellant's App. p. 228.

From 1990 to 1993—when K.B. ranged from about five to eight years old—K.B. continued to go over to Candler's house when her mother visited Berry. K.B. estimated that she did so on "more than five" occasions. *Id.* at 229. On some of these occasions, K.B. performed oral sex on Candler, and he ejaculated into her mouth. On other occasions, Candler performed oral sex on K.B. by putting his tongue in her vagina. K.B. never told anyone about these incidents because Candler threatened to hurt her family. At first, K.B. did not realize what was happening. But once K.B. realized what was happening was wrong, she refused to visit Candler alone.

K.B. did not tell anyone about the incidents with Candler until the age of fifteen when she told a friend because she wanted

to be comforted. When she was sixteen years old, K.B. told an adult from church. K.B. told another friend when she was seventeen years old. Shortly thereafter, K.B. told her mother and stepfather, who promptly contacted Child Protective Services. Thereafter, a police investigation ensued.

In March 2003, the State charged Candler with two counts of Child Molesting as a Class B felony.[1] Thereafter, Candler filed a Rape Shield Notice pursuant to Indiana Code § 35–37–4–4(c)(1) and Evidence Rule 412(b) giving the trial court "notice of his intent to present evidence that [K.B.] had made demonstrably false prior allegations of child molesting" against her stepfather. *Id.* at 33. In a deposition and at the hearing on this matter, K.B. admitted that she had previously reported that her stepfather had touched her "in an inappropriate manner," which made her feel uncomfortable. *Id.* at 36. She clarified that her stepfather never "molested [her] or went underneath [her] clothes or anything of that matter at all" and that some of her allegations were "true." *Id.* at 37. However, K.B. explained that upon reflection, her stepfather was only "playing" with her and that she probably "took things more seriously . . . than [she] should have" because of what happened before with Candler. *Id.* Following the hearing, the trial court issued the following order:

> The testimony from the victim and depositions of others fail[ ] to establish just what specific allegations were said to have been made against the stepfather. While questions were asked about prior allegations of "inappropriate touching" there was nothing presented to establish that the victim had alleged tou[c]hing of her private parts nor touching under circumstances suggest-

ing sexual intent on the part of her stepfather.

> The victim herself never acknowledged that the complaints she had made were false; but only that she felt uncomfortable when touched by her stepfather; and she may have overreacted in light of her memory of the Defendant's touching her.

> Similarly there was no evidence presented to suggest that whatever the victim may have complained about respecting the stepfather was demonstrably false. The only evidence presented was that the Child Protective Services did not pursue her complaint; and that after a brief period of time when she was removed from her stepfather and mother's home, that she returned to live with them.

*Id.* at 92–93. The trial court concluded that "the evidence of the alleged victim's statements or allegations against her stepfather are excluded from the trial herein." *Id.* at 93.

Before trial, Candler filed a Motion in Limine seeking to prohibit testimony from K.B.'s friends and family that K.B. told them about the incidents with Candler. Candler alleged that such statements were hearsay, irrelevant, and unduly prejudicial. At the hearing, the trial court found that "there is some marginal relevance to the fact that those allegations were, at least, disclosed to these folks that have been named" and that the probative value was not substantially outweighed by the danger of unfair prejudice. Tr. p. 249. Accordingly, the trial court concluded that the witnesses would be allowed to testify about the circumstances surrounding K.B.'s disclosures but not about the content of K.B.'s disclosures.

---

1. Ind.Code § 35–42–4–3.

A jury trial was then held, and Candler was convicted as charged. The trial court sentenced Candler to ten years with four years suspended for each count of Child Molesting as a Class B felony. The trial court ordered the sentences to run concurrently. Candler now appeals.

### Discussion and Decision

Candler raises two issues on appeal. First, he contends that the trial court erred by excluding evidence that K.B. had made a false allegation of sexual misconduct against her stepfather. Second, Candler contends the trial court erred by allowing two witnesses to testify at trial that K.B. had told them about the incidents with Candler. We analyze each issue in turn.

### I. Accusation of Prior Sexual Misconduct

■ Candler contends that the trial court erred by excluding evidence that K.B. had made a false allegation of sexual misconduct against her stepfather. The admission of evidence relating to a victim's past sexual conduct is governed by Indiana Evidence Rule 412, which is commonly referred to as the Rape Shield Rule.[2] *Morrison v. State*, 824 N.E.2d 734, 739 (Ind.Ct. App.2005), *trans. denied*. Evidence Rule 412 provides that, with very few exceptions, in a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted into evidence. Certain evidence may be admitted, provided that it falls within one of the following exceptions: (1) evidence of the victim's or of a witness's past sexual conduct with the defendant; (2) evidence that shows that some person other than the defendant committed the act upon which the prosecution is founded; (3) evidence

that the victim's pregnancy at the time of trial was not caused by the defendant; or (4) evidence of conviction for a crime to impeach under Evidence Rule 609. Ind. Evidence Rule 412. In addition to these enumerated exceptions, a common law exception has survived the 1994 adoption of the Indiana Rules of Evidence. *Morrison*, 824 N.E.2d at 739–40. This exception provides that evidence of a prior accusation of rape is admissible if: (1) the victim has admitted that his or her prior accusation of rape is false or (2) the victim's prior accusation is demonstrably false. *Id.; see also State v. Walton*, 715 N.E.2d 824, 828 (Ind. 1999). Prior accusations are demonstrably false where the victim has admitted the falsity of the charges or they have been disproved. *Morrison*, 824 N.E.2d at 740.

■ Here, the trial court found that K.B. did not admit the falsity of the charges and that the charges were not demonstrably false. Accordingly, the trial court did not allow the evidence to be admitted at trial. As a general rule, when the admission of evidence is predicated on a factual determination by the trial court, we review under a clearly erroneous standard of review. *See Davenport v. State*, 749 N.E.2d 1144, 1148 (Ind.2001), *reh'g denied*. However, the Indiana Supreme Court, in addressing the same issue of whether charges were false or demonstrably false, held that appellate courts review a trial court's ruling concerning the sufficiency of the foundation for an abuse of discretion. *Walton*, 715 N.E.2d at 828. In doing so the *Walton* court noted, "Because the predicates or foundation requirements to admissibility often require factual determinations by the trial court, these findings are entitled to the same deference on ap-

---

2. The legislature enacted Indiana Code § 35–37–4–4, which is commonly referred to as the Rape Shield Statute. To the extent there are any differences between the Rape Shield Rule and the Rape Shield Statute, the Rape Shield Rule controls. *Fugett v. State*, 812 N.E.2d 846, 848–49 (Ind.Ct.App.2004).

peal as any other factual finding, *whether that is described as a clearly erroneous or abuse of discretion standard." Id.* (emphasis added).

 Although these standards of review have been treated the same, the clearly erroneous standard appears semantically to be more correct than the abuse of discretion standard when applied to factual determinations of the trial court. As Justice Boehm notes in a case involving factual findings:

> Trial courts do not, however, have "discretion" to make findings. Rather, trial courts are to use their best judgment to arrive at the correct result. They are bound by the law and the evidence and it is usually an error, not an "abuse" if the appellate court disagrees. Trial courts must of course exercise judgment, particularly as to credibility of witnesses, and we defer to that judgment because the trial court views the evidence first hand and we review a cold documentary record. Thus, to the extent credibility or inferences are to be drawn, we give the trial court's conclusions substantial weight. But to the extent a ruling is based on an error of law or is not supported by the evidence it is reversible, and the trial court has no discretion to reach the wrong result.

*Pruitt v. State,* 834 N.E.2d 90, 104 (Ind. 2005), *reh'g pending.* We therefore term our standard of review in this case as clearly erroneous.

Turning to the merits of this issue, the record shows that K.B. alleged that her stepfather inappropriately touched her, which made her feel uncomfortable. K.B. never admitted that this allegation was false. Rather, K.B. clarified that her stepfather never touched her on her private areas or underneath her clothes. K.B. explained that upon reflection, she "overreacted" in order to "protect" herself from what happened with Candler and that her stepfather "didn't have any intent of being sexually involved with [her] at all or doing anything like that with [her] personal body." Tr. p. 28. In essence, K.B. stated that she misinterpreted her stepfather's intentions when he touched her; she did not say that he did not touch her. Based on this evidence, the trial court's factual determination that K.B. did not admit the falsity of the charges and that the charges were not demonstrably false is not clearly erroneous.[3] Accordingly, the trial court did not err by excluding evidence that K.B. had made a false allegation of sexual misconduct against her stepfather.

## II. Relevance

 Candler next contends that the trial court erred by allowing two witnesses to testify at trial that K.B. had told them about the incidents with Candler because their testimony was "not relevant to the issue at hand."[4] Appellant's Br. p. 10. Specifically, Judy Nevels, an adult from K.B.'s church, and Ashley Lichtenbarger, K.B.'s friend, testified regarding the circumstances of K.B.'s disclosures, including when K.B. told them about Candler; neither of them testified about the content of K.B.'s disclosures.[5]

---

3. Evidence such as K.B.'s retreat from her earlier characterization of her stepfather's conduct may have created an inference that her assertion of sexual misconduct was false. Such mere inference, however, does not render the accusation demonstrably false. *Fugett,* 812 N.E.2d at 849.

4. Although Candler relies on *Modesitt v. State,* 578 N.E.2d 649 (Ind.1991), we find that case to be inapposite because it involved several witnesses testifying about the victim's out-of-court statements, which did not occur here.

5. We point out that Candler does not argue on appeal that the trial court erred in admit-

On appeal, the State argues that Nevels' and Lichtenbarger's testimony is relevant "because, due to the time discrepancy between when the acts occurred and when they were reported and investigated, the victim's disclosure made it more likely than not that the victim was molested." Appellee's Br. p. 10. In particular, the State highlights that the incidents occurred between 1990 and 1993, yet the police were not contacted until 2003, leaving a significant gap of time for which to account.

Evidence having any tendency to make the existence of a material fact more or less probable than it would be without the evidence is relevant. Ind. Evidence Rule 401. Evidence that is not relevant is not admissible. Ind. Evidence Rule 402. We review a trial court's ruling as to relevance for an abuse of discretion.[6] *Williams v. State*, 749 N.E.2d 1139, 1142 (Ind.2001).

Here, the trial court found that the fact that K.B. disclosed the incidents with Candler to other persons was marginally relevant. We agree. The molestations began in 1990 when K.B. was about five years old, but the investigation did not begin until 2003 when K.B. was two weeks short of her eighteenth birthday. During that time period, however, K.B. told friends and family. Nevels' and Lichtenbarger's testimony helps account for these intervening years and has the tendency to prove the fact that Candler molested K.B. more likely. In addition, defense counsel highlighted this thirteen-year delay during closing argument.

█ Even if Nevels' and Lichtenbarger's testimony is irrelevant, evidence admitted in violation of Evidence Rules 402 does not require a conviction to be reversed "if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect a party's substantial rights." *Houser v. State*, 823 N.E.2d 693, 698 (Ind.2005) (quotation omitted). In addition, any error in the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted. *See Stephenson v. State*, 742 N.E.2d 463, 481 (Ind.2001). K.B. testified at trial that she told Nevels and Lichtenbarger about the incidents with Candler, and she described the circumstances of those disclosures. Therefore, any error in the admission of Nevels' and Lichtenbarger's testimony would have been harmless.[7] The trial court did not abuse its discretion by allowing Nevels and

---

ting testimony from K.B.'s stepfather surrounding the circumstances of her disclosure to him and K.B.'s mother.

**6.** Arguably, when the admission of evidence does not turn on factual determinations but instead hinges on legal conclusions, the standard of review should be *de novo*. *See Evans v. State*, 727 N.E.2d 1072, 1081 (Ind.2000). For an example, see *Swajian v. General Motors Corp.*, 916 F.2d 31, 34 (1st Cir.1990) ("[T]he district court *erred as a matter of law* by never fully considering the probative value of the evidence and by never making a determination that the evidence would result in 'unfair prejudice.' ") (emphasis added). However, because our Supreme Court has determined that issues of admissibility are to be reviewed for an abuse of discretion and we are bound by our Supreme Court's decisions, we do not analyze this issue under a *de novo* standard of review. Even if we were to do so, the trial court did not err in its admission of this evidence.

**7.** To the extent that Candler argues on appeal that even if Nevels' and Lichtenbarger's testimony is relevant, it is unduly prejudicial in violation of Evidence Rule 403, we point out that K.B.'s testimony was cumulative of theirs. Also, any prejudice was minimized by not allowing them to testify about the content of K.B.'s disclosures.

Lichtenbarger to testify about the circumstances of K.B.'s disclosures.

Affirmed.

SULLIVAN, J., and FRIEDLANDER, J., concur.