Ruben MALDONADO, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 32A01–0812–PC–571.

Court of Appeals of Indiana.

June 29, 2009.

Transfer Denied Sept. 11, 2009.

---

John Pinnow, Greenwood, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-petitioner Ruben Maldonado appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erroneously concluded that he did not receive the ineffective assistance of trial counsel. Maldonado argues that his attorney should have attempted to introduce evidence of the victim's alleged statements about a sexual encounter with an imaginary brother. We find that even if these statements had fallen under the purview of the Rape Shield Rule,[1] they would have been admissible via the common law exception for demonstrably false accusations of sexual misconduct. That said, we find that

---

1. Indiana Evidence Rule 412.

trial counsel could have made a reasonable strategic decision to keep this evidence out of the record for fear of evidence of Maldonado coaching his six-year-old son prior to his deposition coming into evidence as well. Therefore, we find that trial counsel was not ineffective and affirm.

### FACTS [2]

The underlying facts, as reported by this court in Maldonado's direct appeal, are as follows:

> ... T.S. lives with her parents two houses away from where Maldonado lives with his family. T.S. sometimes played with Maldonado's son, J.M., who is a year younger than T.S.
>
> In August 1999, T.S. told her mother, Cynthia, that Maldonado made her eat candy she did not like and that he made her feel uncomfortable. Cynthia instructed T.S. to tell Maldonado that she did not want any candy and to say "no thank you." Tr. p. 75.
>
> On March 18, 2000, T.S. spent part of the day playing with J.M. That night, T.S. told her mother, "Mom, Ruben made me play the candy game again today." Tr. p. 76. T.S. then told her mother that Maldonado took her to the loft in his house, blindfolded her, and put "candy" in her mouth. Tr. p. 77. When Cynthia asked T.S. to describe the candy, she said it was like "sucking on my thumb" but that it was "fatter and it was longer and there was juice that would squirt from it." *Id.*
>
> After T.S. went to bed, Cynthia called her husband, Don, at work. The following morning, Don spoke with T.S. T.S. told him about the candy game, including the use of the blindfold, the juice,

and the guessing of the flavor. T.S. also told him that Maldonado held her head back and "moved it back and forth until the juice" squirted out. Tr. p. 106. When Don asked her what the "juice" was like, she stated that "it was kind of slimy like snot out of your nose." Tr. pp. 106–07. Don then called the police.

> After detectives spoke with Cynthia and Don the same day, they conducted separate videotaped interviews with T.S. and Maldonado. Maldonado admitted playing a game with T.S. during which he took her to the loft, blindfolded her, put candy into her mouth, and asked her to guess the flavor. In her statement, T.S. reiterated that the "candy" was like "sucking on my thumb" except that the candy was "fatter" and "squishy." Tr. pp. 193–94. T.S. stated that Maldonado would tip her head back "so he can get the juice back ... the juice put ... back in from the candy in my mouth." Tr. p. 195. She described the "juice" as being like "milk" but that it did not taste like milk. Tr. pp. 196–98. She stated that the juice did not come out of the candy by biting the candy, but that "you have to hold your tongue in the beginning and the ... he tries to ... get the juice to come out." Tr. p. 196. She stated that Maldonado "shakes it into my mouth" and then "I just swallow the juice." Tr. pp. 196–97.

*Maldonado v. State*, No. 32A04–0110–CR–441, slip op. 2–3, 772 N.E.2d 1037 (Ind.Ct. App. July 10, 2002). On March 22, 2000, the State charged Maldonado with criminal deviate conduct and child molesting, both as class A felonies. The State eventually dismissed the criminal deviate conduct

---

**2.** We held oral argument in Indianapolis on June 9, 2009. We thank counsel for their excellent oral advocacy.

charge and proceeded to trial only on the child molesting count.

At Maldonado's trial, T.S.'s mother and father both testified that she did not make up stories about sexual things. Trial Tr. p. 82, 110. In a pretrial deposition, six-year-old J.M. attested that T.S. had told him about a sexual encounter with her brother. According to J.M., T.S. said that "she'd stick hers out and then he'd—he'd do it and then he put it in—right in the private part and then it—she said that it looked like a hot dog bun." PCR Ex. 6 p. 50. T.S., however, does not have a brother. Before trial, the State obtained an order in limine precluding either party from eliciting any testimony covered by the Rape Shield Rule. When J.M. testified at trial, Maldonado's counsel did not attempt to elicit any testimony about T.S.'s alleged story about a sexual encounter with a fictitious brother. At the time of the post-conviction hearing, counsel could not recall the basis of that decision.

On August 30, 2001, the jury found Maldonado guilty of class A felony child molesting, and the trial court sentenced him to a thirty-year term on September 10, 2001. Maldonado filed a direct appeal and this court affirmed. *Maldonado,* No. 32A04–0110–CR–441, slip op. at 15 (holding that T.S. was competent to testify, that the trial court did not abuse its discretion by admitting T.S.'s statements to her parents and to the police, that the trial court did not improperly instruct the jury regarding mens rea, and that there was sufficient evidence supporting the conviction).

On December 3, 2007, Maldonado filed a petition for post-conviction relief, arguing in relevant part that trial counsel was ineffective for failing to make an offer of proof or present evidence regarding T.S.'s alleged statements to J.M. regarding her imaginary brother. Following a May 27, 2008, hearing, the post-conviction court de-

nied the petition, concluding, in relevant part, as follows:

4. T.S. was an only child; because any "brother" was imaginary, the "conduct" referred to in her alleged statement was also imaginary. Imaginary conduct with an imaginary brother does not fall under any exception to Evidence Rule 412 [the Rape Shield law] or to the common law rule.

5. Further, a statement about imaginary conduct with an imaginary brother is not relevant evidence here.... Whether T.S. uttered a statement about imaginary conduct with an imaginary brother does not tend to make the existence or non-existence of any material fact regarding whether Maldonado molested T.S. more or less probable.

\* \* \*

7. Moreover, because the trial court acted within its discretion by excluding J.M.'s allegation of T.S.'s statement as not relevant, as hearsay, or as not admissible under Evidence Rule 412, Maldonado could not have been prejudiced by [counsel's] not offering it at trial.

8. A review of the entire record does not reveal that T.S. manufactured the sexual incident(s) that occurred upstairs in Maldonado's loft or the identity of Maldonado as the sole perpetrator of "the candy game." The trial court properly excluded, and [counsel] properly respected the exclusion, of hearsay regarding imaginary acts with an imaginary brother.

\* \* \*

10. Maldonado has not demonstrated that [counsel] committed any er-

rors, let alone a reasonable probability that, but for any unprofessional errors, the result of his trial would have been different; thus no prejudice has been established. As the record reveals and our Court of Appeals noted, the evidence in this case "is more than sufficient to sustain his conviction." [*Maldonado*, No. 32A04–0110–CR–441, slip op. p. 14.] Maldonado has not demonstrated that [counsel's] performance fell below an objective level of reasonableness based upon prevailing professional norms and that any deficient performance resulted in prejudice.

Appellant's App. p. 11–13 (some internal citations omitted). Maldonado now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *McCarty v. State*, 802 N.E.2d 959, 962 (Ind.Ct.App.2004), *trans. denied.* When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Post-conviction procedures do not afford petitioners with a "super appeal." *Richardson v. State*, 800 N.E.2d 639, 643 (Ind.Ct.App.2003). Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based upon grounds enumerated in the post-conviction rules. *Id.; see also* P–C.R. 1(1).

### II. Assistance of Trial Counsel

Maldonado's sole argument on appeal is that the post-conviction court erred by concluding that he did not receive the ineffective assistance of trial counsel. When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Pinkins v. State*, 799 N.E.2d 1079, 1093 (Ind.Ct.App.2003). First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *Id.* at 687–88, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

■ We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind.1998). If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so. *Wentz v. State*, 766 N.E.2d 351, 360 (Ind.2002).

■ Maldonado argues that his trial counsel was ineffective for failing to at-

tempt to introduce testimony regarding T.S.'s alleged statements to J.M. about her imaginary brother. Among other things, Maldonado argues that this evidence would not have been barred by the Rape Shield Rule.

This court has explained the interplay between the Rape Shield Statute and the Rape Shield Rule:

> Indiana has enacted a Rape Shield Statute and adopted a Rape Shield Rule. *See* I.C. 35–37–4–4; Ind. Evidence Rule 412. Evid. R. 412, commonly referred to as the Rape Shield Rule, embodies the basic principles of Indiana's Rape Shield Statute. However, Evid. R. 412 was not adopted verbatim from the Rape Shield Statute, and to the extent there are differences, Evid. R. 412 controls.

*Fugett v. State*, 812 N.E.2d 846, 848–49 (Ind.Ct.App.2004) (some internal citations omitted). Rule 412 provides, in pertinent part, as follows:

> (a) In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:
>
>   (1) evidence of the victim's or of a witness's past sexual conduct with the defendant;
>
>   (2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded;
>
>   (3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or
>
>   (4) evidence of conviction for a crime to impeach under Rule 609.

There is also a common law exception to the Rape Shield Rule when a defendant seeks to introduce evidence of a prior false accusation of rape or sexual misconduct. *Fugett*, 812 N.E.2d at 848–49; *see also Candler v. State*, 837 N.E.2d 1100, 1103 (Ind.Ct.App.2005) (applying the exception to a child molesting victim's prior allegations of sexual misconduct). Our Supreme Court has explained the reasons for this exception:

> Rule 412 is designed only to preclude evidence of a complaining witness's prior sexual conduct. Evidence of prior false accusations of rape made by a complaining witness does not constitute "prior sexual conduct" for rape shield purposes. *In presenting such evidence, the defendant is not probing the complaining witness's sexual history. Rather, the defendant seeks to prove for impeachment purposes that the complaining witness has previously made false accusations of rape.* Viewed in this light, such evidence is more properly understood as verbal conduct, not sexual conduct. To the extent a defendant offers evidence of prior false accusations of rape to impeach the credibility of the witness, we hold that its admission does not run afoul of the Rape Shield Rule.

*State v. Walton*, 715 N.E.2d 824, 826–27 (Ind.1999) (internal citations and footnotes omitted) (emphasis added).

Here, Maldonado argues that testimony about T.S.'s statements regarding a sexual relationship with an imaginary brother would not have fallen under the Rape Shield Rule, inasmuch as no actual "past sexual conduct" occurred or was at issue. Evid. R. 412. We need not decide that issue, however, inasmuch as even if we were to assume for argument's sake that this evidence would have fallen under the purview of Rule 412, the common law exception would have applied such that the evidence would have been admissible. T.S.'s alleged statements regarding a sexual relationship with an imaginary brother are demonstrably false, given that it is undisputed that she does not have a brother.

Though one could argue that these statements do not qualify as "accusations,"

we find that the purpose of this exception—to enable defendants to offer impeachment evidence while still protecting the victim from being tried on her sexual history—is implicated on these facts. Here, this testimony would not have been introduced to raise questions about T.S.'s sexual past or unnecessarily invade her privacy; instead, it would have been used to question the veracity of her allegations against Maldonado and impeach her parents' testimony that she had never made up stories of a sexual nature in the past. Under these circumstances, therefore, we find that this evidence would have been admissible had Maldonado's attorney sought to introduce it.

■ That conclusion, however, does not end our analysis. That the evidence would have been admissible does not necessarily mean that trial counsel, who did not seek to introduce the evidence, performed deficiently. The record reveals that J.M.'s deposition took place when he was six years old and occurred nearly nine months after Maldonado was charged herein. J.M. attested that he told his parents about the conversation one night at the dinner table after Maldonado was released from jail:

Q. [Your mom and dad] kind of helped refresh your memory, kind of helped—helped you remember some stuff that you'd forgotten?

A. Yes.

PCR Petr. Ex. 6 p. 36.

Q. Okay. Okay. And you really didn't remember [T.S.'s allegations about a sexual relationship with her brother], did you, didn't da—mom and dad remind you of that?

A. Yes.

*Id.* at 51.

Had Maldonado's attorney attempted to inject the issue of T.S.'s alleged statements to J.M. into the trial, it is virtually certain that the State would have pointed to the above portions of the deposition transcript and argued that Maldonado and his wife had coached their six-year-old son to fabricate the entire story. Though we cannot say what the jury would have done had it heard all of this evidence, we can and do conclude that Maldonado's attorney could have made a reasonable strategic decision to forego introducing this evidence because she wanted to avoid the risk of the jurors viewing her client more negatively than they already did. We will not second-guess that decision and will defer to trial counsel's analysis of her client and her case. *See Morgan v. State,* 755 N.E.2d 1070, 1076 (Ind.2001) (declining to find ineffective assistance of counsel where it "would have been a reasonable strategic decision for defense counsel to conclude that a voluntary manslaughter instruction would have been inconsistent with Defendant's testimony"); *Lambert v. State,* 743 N.E.2d 719, 735 (Ind.2001) (declining to find ineffective assistance of counsel where trial counsel "could have reasonably decided" that raising certain objections would have harmed his client). Inasmuch as we find that trial counsel's representation did not fall below an objective standard of reasonableness, Maldonado has failed to establish deficient performance and the post-conviction court did not err by concluding that he did not receive the ineffective assistance of trial counsel.

The judgment of the post-conviction court is affirmed.

MAY, J., and BARNES, J., concur.