## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 11 2019, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry Darnell Austin, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 11, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-533 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Salvador Vasquez, Judge <br><br> Trial Court Cause No. <br> 45G01-1706-FA-2 |

**Robb, Judge.**

# Case Summary and Issues

[1]     Following a jury trial, Larry Austin was convicted of incest, a Class B felony. The trial court sentenced him to sixteen years in the Indiana Department of Correction ("DOC") and ordered that he register as a sex offender. Austin appeals and raises two issues for our review: (1) whether the trial court abused its discretion by admitting testimony that Austin used drugs; and (2) whether the trial court erred by excluding certain evidence. Concluding Austin has waived appellate review of the admissibility of the testimony concerning his drug use but that the trial court did not err in excluding certain evidence, we affirm.

# Facts and Procedural History

[2]     Austin is the biological father of R.A., born December 27, 1994. R.A. was raised by her maternal grandparents in East Chicago, Indiana. After third grade, R.A. lived with her mother and step-father for several years and then returned to her grandparents' home in 2008, at age thirteen. Prior to 2008, R.A. had not seen her father since she was an infant and had only spoken with him on the phone occasionally. R.A. met Austin for the first time in June 2008, the day she moved back in with her grandparents. Austin and R.A. went to a barbeque in Gary, Indiana, and R.A.'s grandparents allowed R.A. to spend the night with Austin. That night, Austin raped R.A. and told her that "this was [their] secret and . . . if [she] was to tell anybody, that daddy would go to jail." Record of Jury Trial Proceedings ("Tr."), Volume 4 at 170. R.A. did not tell

anyone what had happened, and Austin continued to sexually abuse her. R.A. testified that Austin had sex with her "[o]ver 30 times[,]" forced her to perform oral sex on him twice, and he performed oral sex on her once. Tr., Vol. 5 at 64. In August 2009, R.A. moved back to Illinois to live with her mother. R.A. was placed into foster care in 2010.

[3] In 2012, R.A. told her foster mother, Mildred Spears, that Austin had sexually abused her. Spears advised R.A. to confront her father about what he had done. The next day, R.A. and Spears were in Spears' room when Austin called R.A. on the phone. R.A. told Spears that it was her father calling. R.A. answered the call and put it on speaker phone so Spears could listen. During the conversation, R.A. confronted Austin about the abuse and asked why he had sex with her. R.A. testified that Austin responded that "he felt like [she] was his woman and that's why he . . . did that to [her]." Tr., Vol. 4 at 228. Spears testified, "He said that . . . he was on drugs and she was the only one around at that time." Tr., Vol. 5 at 86. On October 15, 2012, R.A. reported the abuse to the East Chicago Police Department; however, the investigation was not completed at that time. Years later, R.A. contacted the East Chicago police again to determine the status of the case.

[4] On June 2, 2017, the State charged Austin with one count of child molesting, a Class A felony, and one count of incest, a Class B felony. Before trial, the State filed a notice that it intended to introduce Austin's statement "that he was on drugs to explain his conduct and interaction with [R.A.] from June 15, 2007 [to] July 31, 2009." Appendix of the Appellant, Volume Two at 76, 165.

Notably, among Austin's numerous motions in limine, he requested that the State refrain from "introducing evidence that [he] used drugs" and argued this evidence was inadmissible under Indiana Rules of Evidence 403 and 404(b). *Id.* at 121.

[5] A jury trial was held over several days in November 2018. On the first day of trial, before jury selection, the trial court and the parties discussed the various motions that had been filed. With respect to the State's notice of intent to introduce 404(b) evidence and Austin's corresponding motion in limine, the State again stated that it intended to introduce testimony from Spears that when R.A. confronted Austin over the phone, he admitted to the allegations, apologized, and stated he was on drugs at the time. The trial court preliminarily ruled that the information the State sought to introduce was excluded and granted the relevant portion of Austin's motion in limine. Following the discussion, the jury was selected and sworn, and the court recessed for the evening.

[6] The next morning, the trial court reconsidered the issue and the parties discussed it outside the presence of the jury. The trial court stated that Spears' testimony is relevant and pertinent, reasoning:

> [I]f it's drug usage which would play into the part of a particular person's state of mind at the time of an event – opportunity, motive – that would have a bearing on the act itself, then many times this information can come in. . . .

[T]he statement by the defendant is relevant and pertinent and any discrepancy would go to the weight and not the admissibility.

I believe [Indiana Rule of Evidence] 403 also would play a part in this. Even though it may have prejudicial value I think . . . it's substantive and certainly relevant and pertinent and probative and it has significant probative value, so much so that it outweighs . . . any prejudice that the statement may have.

I believe that given the proffer it's a cross-examination issue, not an admissibility issue.

Tr. Vol. 3 at 195-96. Austin argued that the statement is overly broad and explained:

just this generalized – like I was on drugs at some period of time in my life statements, the prejudicial effect of that far outweighs any probative value. . . . [I]t would be more appropriate if the State could tie it to a specific incident. And . . . it doesn't sound like they can.

Id. at 198. The State argued that R.A. confronted Austin during the phone call and his response that he was on drugs demonstrates his state of mind and motive. The trial court agreed but acknowledged Austin's concern that the statement was prejudicial and lacked specificity as to a time frame, but nonetheless "believe[d] that it is not so substantial that it outweighs the significant probative value of the information." Id. at 200. Austin confirmed with the court that Spears' testimony as to what she heard was conditioned upon establishing an adequate foundation of the phone call's circumstances

through R.A.'s testimony. Accordingly, the trial court ordered that references to drug use were not permitted during opening statements. The defense stated, "Well, then, I guess we'll see depending on . . . what [R.A.'s] testimony is about the phone call will . . . indicate whether – you know, where we stand and what arguments we might make." *Id*. at 201-02. The trial continued.

[7]    During the State's direct examination of Spears, Spears testified that R.A. had told her that Austin was calling, answered the call, and spoke with him via speaker phone – allowing Spears to hear the conversation.

> [State]:    And do you remember what the conversation was between [R.A.] and [Austin]?
>
> [Spears]:    Well, she asked him why did he –
>
> [Defense]:    Objection. Hearsay –
>
> [State]:    Questions are not hearsay.
>
> [Defense]:    -- as to – as to [R.A.'s] hearsay.
>
> [Court]:    It was a question that she would have posed to her father on the phone, right?
>
> [State]:    Right.
>
> [Court]:    It's overruled.

Tr., Vol. 5 at 85-86. The State continued with its direct examination of Spears. She testified that R.A. asked Austin why he had sex with her. Spears heard his response and testified, "He said that . . . he was on drugs and she was the only one around at that time." *Id*. at 86. Austin did not object.

[8] During the defense's cross-examination of Spears, counsel asked: "Now, isn't it true that after [R.A.] left your household, she made a false accusation against your son?" *Id*. at 101. The State objected. During a sidebar with the trial court, the State argued the question was improper because, in Spears' deposition, "she specifically said [the allegation] was not a false accusation" and she believed R.A. *Id*. at 102. The defense made an offer of proof, explaining,

> When asked in the deposition, she started to tell about her son – that [R.A.] said that her son was the father of the child that [R.A.] was pregnant with. A DNA test was done because she was very concerned that her son had been accused . . . of having sex with a child in the household. And she made her son get a DNA test that proved that that was false. And so that is a demonstra[bly] false accusation against another person about sexual activity.

*Id*. The State responded that was "absolutely incorrect" and asserted that Spears had also stated in the deposition that she *did not* have any concern that R.A. falsely accused her son of being sexually involved with R.A. *Id*. In fact, Spears had stated that she believed R.A. The trial court found that the accusation was not demonstrably false because Spears stated that she believed R.A. and therefore, the trial court prohibited the line of questioning. The trial

court admonished the jury and the trial continued. Ultimately, the jury found Austin guilty of incest and not guilty of child molesting. The trial court sentenced Austin to sixteen years in the DOC. Austin now appeals.

# Discussion and Decision

## I. Standard of Review

Our standard of review in this area is well-settled. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the trial court's decision for an abuse of that discretion. *Reed v. Bethel*, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Morrison v. State*, 824 N.E.2d 734, 739 (Ind. Ct. App. 2005), *trans. denied*.

## II. Admission of Testimony: Drug Use

First, Austin argues that Spears' testimony regarding his "admission to drug use was inadmissible character evidence and should have been excluded." Brief of the Appellant at 10. The State, however, maintains that the trial court properly admitted Spears' testimony pursuant to Rule 404(b). We disagree with both parties. Although not raised by either party, our review of the record compels us to conclude that Austin did not preserve the issue by making a contemporaneous objection at the time the testimony was offered.

Accordingly, Austin has waived appellate review of the admissibility of the testimony.

[11]   A ruling on a motion in limine does not determine the ultimate admissibility of evidence; that determination must be made by the trial court in the context of the trial itself. *Prewitt v. State*, 761 N.E.2d 862, 871 (Ind. Ct. App. 2002). Therefore, the defendant must make a contemporaneous objection at the time the evidence is offered, allowing the trial court an opportunity to make a final ruling on the matter in the context in which the evidence is introduced. *Id.* Ultimately, a party's failure to make a contemporaneous objection to evidence offered at trial precludes later appellate review of its admissibility. *Id.* Our supreme court has explained this process:

> Only trial objections, *not* motions in limine, are effective to preserve claims of error for appellate review. Failure to object at trial to the admission of the evidence results in waiver of the error, notwithstanding a prior motion in limine. Furthermore, a claim of trial court error in admitting evidence may not be presented on appeal unless there is a timely trial objection "stating the specific ground of objection, if the specific ground was not apparent from the context." To preserve a claimed error in the admission of evidence, a party must make a contemporaneous objection "that is sufficiently specific to alert the trial judge fully of the legal issue." A mere general objection, or an objection on grounds other than those raised on appeal, is ineffective to preserve an issue for appellate review.

*Raess v. Doescher*, 883 N.E.2d 790, 796-97 (Ind. 2008) (internal citations omitted) (emphasis added).

[12] Here, after receiving the State's notice of its intent to introduce 404(b) evidence, Austin filed a pre-trial motion in limine seeking to exclude evidence of his drug use. Although the trial court initially granted Austin's motion before the trial commenced, the parties discussed the issue again before opening statements and the presentation of any evidence. At that time, Austin raised concerns about the lack of a specific time frame for his alleged drug use and opined that the State would not be able to establish a nexus between the drug use and the alleged abuse. The State argued the evidence proved Austin's motive and state of mind. The trial court concluded that the evidence was pertinent and would be allowed if the proper foundation was established, namely the circumstances of the phone call. Austin did not object during this discussion. Instead, the defense stated, "Well, then, I guess we'll see depending on . . . what her testimony is about the phone call will . . . indicate whether – you know, where we stand and what arguments we might make." Tr., Vol. 3 at 201-02. Later in trial, Austin failed to object *when* Spears' testimony regarding Austin's drug use was introduced.

[13] We acknowledge that, shortly before this testimony, defense counsel made a hearsay objection after the State asked Spears if she "remember[ed] what the conversation was between [R.A.] and [Austin]?" Tr., Vol. 5 at 85. However, the objection was made only in response to the State's question regarding the conversation between R.A. and Austin – unrelated to Spears' later testimony regarding Austin's drug use. Additionally, the basis for the objection was hearsay, not Rule 404(b). When the State asked the question that led to what

Austin now alleges was objectionable testimony, Austin did not object on any ground. Therefore, Austin failed to preserve the issue for appellate review. *See Raess*, 883 N.E.2d at 797. Because Austin failed to timely object to Spears' testimony concerning his drug use, he has waived appellate review of its admissibility.

# III. Exclusion of Evidence: Rule 412

[14] Next, Austin argues that the trial court abused its discretion "in finding that the accusation [that Spears' son was the father of R.A.'s child] was not demonstrably false and therefore not an exception to the Rape Shield Rule." Br. of the Appellant at 17. Austin maintains that R.A.'s allegation that her foster brother impregnated her was demonstrably false because a DNA test proved he was not the father. We conclude the trial court did not err in excluding this evidence and precluding further cross-examination on the issue.

[15] We will generally not reverse a trial court's exclusion of evidence unless the exclusion is a manifest abuse of discretion resulting in a denial of a fair trial. *Morrison*, 824 N.E.2d at 739. We will also find an abuse of discretion when the trial court controls the scope of cross-examination to the extent that a restriction substantially affects the defendant's rights. *Id*. As a general rule, when the admission of evidence is predicated on a factual determination by the trial court, we review under a clearly erroneous standard of review. *Candler v. State*, 837 N.E.2d 1100, 1103 (Ind. Ct. App. 2005). "Because the predicates or foundational requirements to admissibility often require factual determinations

by the trial court, these findings are entitled to the same deference on appeal as any other factual finding, whether that is described as a clearly erroneous or abuse of discretion standard." *State v. Walton*, 715 N.E.2d 824, 828 (Ind. 1999) (quoting *Stahl v. State*, 686 N.E.2d 89, 91) (Ind. 1997)). Here, because the trial court's basis for excluding the evidence was predicated upon its factual determination that the accusation was not demonstrably false, we review under a clearly erroneous standard. *Id.*

[16] The admission of evidence relating to a victim's past sexual conduct is governed by Indiana Evidence Rule 412, which is commonly referred to as the Rape Shield Rule. *Candler*, 837 N.E.2d at 1103. Rule 412 provides that in a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted into evidence unless it falls into one of the following exceptions: (1) evidence of the victim's or a witness's past sexual conduct with the defendant; (2) evidence that shows that some person other than the defendant committed the act upon which the prosecution is founded; (3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or (4) evidence of conviction of a crime for the purposes of impeaching the victim or witness as permitted by Evidence Rule 609. *Id.*

[17] In addition to these enumerated exceptions, a common-law exception survived the 1994 adoption of the Indiana Rules of Evidence. *Morrison*, 824 N.E.2d at 739. This exception provides that a prior accusation of rape is admissible if (1) the victim has admitted that her prior accusation of rape is false; or (2) the victim's prior accusation is demonstrably false. *Graham v. State*, 736 N.E.2d

822, 825 (Ind. Ct. App. 2000), *trans. denied*. "Prior accusations are demonstrably false where the victim has admitted the falsity of the charges or they have been disproved." *Candler*, 837 N.E.2d at 1003. The common law exception to prior false accusations of rape has been interpreted to apply not only to rape, but also to prior false allegations of other sex crimes. *State v. Luna*, 932 N.E.2d 210, 213 (Ind. Ct. App. 2010). As this court has explained, when a defendant presents evidence of one of these exceptions, he or she is not probing the victim's (or witness's) sexual history. *See Graham*, 736 N.E.2d at 825. Instead, the evidence is proffered for impeachment purposes to demonstrate that the complaining witness has previously made false accusations of rape. *Id*. "Viewed in this light, evidence of prior false rape accusations is more properly understood as verbal conduct, not sexual conduct. Consequently, its admission does not run afoul of the Rape Shield Rule." *Id*.

[18] The false accusation at issue in this case is R.A.'s paternity claim – R.A.'s allegation that Spears' son was the father of R.A.'s child. Indeed, implicit in R.A.'s accusation is an allegation of prior sexual conduct with Spears' son. But there is no evidence that R.A. ever accused her foster brother of raping her. Evidence that R.A. falsely accused Spears' son of fathering her child or that she had a sexual relationship with him long after Austin's alleged crimes does not fall into one of the enumerated exceptions in Rule 412. Nor is it encompassed in the common-law exception because R.A. never admitted to making a false accusation against Spears' son and neither party rejects the proposition that

R.A. had previously engaged in sexual conduct with Spears' son whether or not he was the father of her child.

[19] Austin's attempt to introduce this evidence constitutes evidence of the victim's sexual history, evidence that falls squarely into the category of evidence Rule 412 seeks to exclude. As our supreme court has explained, Rule 412 reflects the following policy:

> [I]nquiry into a victim's prior sexual activity is sufficiently problematic that it should not be permitted to become a focus of the defense. Rule 412 is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and, importantly, to remove obstacles to reporting sex crimes. Consequently, "[t]he Rule does not permit the trial to stray from the central issue of guilt or innocence of the defendant into a full-scale investigation of charges made by the prosecutrix against other persons."

*Walton*, 715 N.E.2d at 826 (internal citations omitted).

[20] In sum, because there is no evidence to demonstrate that R.A.'s accusation that she and Spears' son engaged in prior sexual conduct was false, the trial court did not err in concluding it was not demonstrably false. Accordingly, we find no error in the trial court's exclusion of this evidence.[1]

---

[1] Our review of the record reveals that Austin filed a Motion to Introduce Rape Shield Evidence seeking to introduce evidence that Austin took R.A. to Planned Parenthood to obtain birth control to demonstrate that R.A. was sexually active with *other* individuals, not so he could continue to abuse her without impregnating

# Conclusion

In conclusion, Austin waived appellate review of the admissibility of his drug use because he failed to make a contemporaneous objection at trial and the trial court did not err in excluding evidence of R.A.'s sexual history. Accordingly, we affirm.

Affirmed.

Mathias, J., and Pyle, J., concur.

---

her. *See* App. of Appellant, Vol. Two at 85-86. The State argues that although Austin provided notice of the Planned Parenthood issue, he did not provide notice of his intent to introduce evidence of R.A.'s allegations with respect to Spears' son. Where a defendant seeks to offer evidence of a victim's past sexual conduct, whether or not that evidence is within the scope of the exceptions to Rule 412, he or she must submit a written motion that includes a description of the evidence at least ten days before trial. Evid. R. 412(c); *Conrad v. State*, 938 N.E.2d 852, 855 (Ind. Ct. App. 2010). In *Oatts v. State*, we acknowledged a split among this court as to whether a defendant who fails to comply with the procedural requirements of Rule 412 is precluded from presenting evidence of a victim's past sexual conduct resulting in waiver on appeal. 899 N.E.2d 714, 719 n.6 (Ind. Ct. App. 2009). The *Oatts* panel declined to address the issue of waiver in that case because "even assuming [the defendant] did not waive this issue, [it could not] say that the trial court abused its discretion." *Id.* We, too, decline to address this issue on the same basis: any waiver notwithstanding, we conclude the trial court did not abuse its discretion in excluding this evidence.