



FILED

Mar 18 2026, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

State of Indiana,
*Appellant-Plaintiff,*

v.

David E. Watson,
*Appellee-Defendant.*

March 18, 2026

Court of Appeals Case No.
25A-CR-1789

Appeal from the
Perry Circuit Court

The Honorable
M. Lucy Goffinet, Judge

Trial Court Cause No.
62C01-2208-F4-446

**Opinion by Senior Judge Najam**
Judges Vaidik and Scheele concur.

**Najam, Senior Judge.**

# Statement of the Case

[1] The State brings this interlocutory appeal, challenging the trial court's order ruling that evidence of the alleged victim's prior accusations against others of sexual misconduct and rape could be introduced in the prosecution against her uncle, David E. Watson. The State charged Watson with four counts of sexual misconduct with a minor and two counts of child exploitation as to M.S., his niece, the complaining witness. Concluding that M.S.'s prior accusations were neither recanted nor shown to be demonstrably false, we reverse and remand.

# Facts and Procedural History

[2] In 2019, M.S., who was thirteen or fourteen years old, and her minor cousin, Austin, exchanged lewd text messages about proposed future sexual conduct between the two. And, after that incident, also in 2019, M.S. was caught having inappropriate conversations with and sending nude photographs of herself to adult men. Watson, her uncle, discovered those communications and notified M.S.'s parents. M.S. was disciplined by Watson, and her aunt, Diane. And she was disciplined by both of her parents. One of the disciplinary measures used was denying M.S. cellphone privileges.

[3] After receiving her discipline for that behavior, M.S. alleged that sometime in 2019, when M.S. was thirteen or fourteen years old, Austin inappropriately touched her under her pants while they were sleeping in the same room at his house. M.S. stated that Austin touched her under her clothing while she was sleeping on a couch. Brett, M.S.'s brother, was allegedly sleeping on the same couch, approximately three to ten steps from M.S. when this incident was alleged to have happened.

[4] Next, on May 4, 2022, M.S. made accusations to law enforcement officers that Watson had inappropriately touched her on two occasions. The State filed charges against Watson, alleging that between October and December 2020, Watson sexually abused M.S., his fifteen-year-old niece, on two separate occasions by touching and fondling and penetration of her vagina with his finger. Appellant's App. Vol. 2, pp. 14-15. The State further alleged that sometime between October 1, 2020 and May 4, 2022, Watson disseminated nude photos of M.S. to her brother and to her female friend, Emily. *Id.* at 44-45.

[5] After deposing M.S.,[1] Watson's counsel filed a "Notice of Intent To Offer Evidence Of Alleged Victim's History Of Accusing Third Parties Of Sexual Misconduct And/Or Rape." *Id.* at 54. In a span of eight years, including the allegations against Watson, M.S. had accused four different boys or men of

---

[1] M.S.'s deposition testimony is not part of the record of this appeal.

sexual misconduct by the time she was fifteen years old. Tr. Vol. 2, p. 35. A hearing was held during which M.S. testified.

[6]     M.S. was nineteen years old at the time of the hearing. At that hearing, she described her family life. She stated that when she was seven or eight, she and Brett, her then nine-year-old brother, lived with their father. M.S. and her brother spent every Friday and Saturday with Watson and Diane. They continued to visit Watson and Diane, her uncle and aunt, every weekend until M.S.'s allegations against him. She said the most frequent discipline used when she was between the ages of eleven and fifteen was the denial of cellphone privileges.

[7]     In addition to the testimony acknowledging her prior accusation against Austin, she described two additional prior incidents. M.S. testified that when she was seven or eight, a person named Kyle stayed at her father's home for a week. M.S. testified that there were three bedrooms at her father's apartment. Kyle and her father slept downstairs, and she and her brother slept in separate bedrooms upstairs. She said that although she could not provide a specific date or year, on one occasion, Kyle inappropriately touched her by touching her vagina one night for around five minutes. She said the light was on in her bedroom at the time and that Kyle stopped the behavior on his own. M.S. reported the incident to her father four days later and around two days after Kyle left. M.S. stated that her father's response was "he's not allowed to come over anymore." *Id.* at 11. The incident was not reported to the Department of Child Services or to the police.

[8]  M.S. further testified that she believed the next incident happened in 2018 when she was twelve years old. She met a sixteen-year-old boy named Patrick through her friendship with a girl named Emily. On the second of three occasions she was around him, she played hide and seek outside at night with him and other children. M.S. testified that Patrick told her to find him first, and when she did, they went into an alley where he pushed her down near a bush and raped her. M.S. additionally testified that the only person she told about the alleged rape was Watson, and she told him around two weeks after the alleged event. According to M.S., Watson was upset when she told him about the event. M.S. saw Patrick one more time after the alleged rape, but it was a brief encounter in Emily's kitchen and the two did not speak to each other.

[9]  At the hearing she acknowledged her deposition testimony, in which she recalled hiding behind a bush and that Patrick found her. And she conceded that she did not include in her earlier deposition testimony any of the statements she attributed to him during her hearing testimony. Further, she agreed that in her deposition, she stated she did not report the alleged rape to Watson, her friends, parents, the police, or the Department of Child Services.

[10] After the hearing, the trial court issued an order ruling that M.S.'s prior allegations against others could be introduced in Watson's trial. The State appeals from that decision.

## Discussion and Decision

The State argues that the trial court erred by ruling that M.S.'s prior allegations would be admissible at trial, contending their admission would violate the Rape Shield Rule as they were not shown to be demonstrably false. Appellant's Br. p. 6.

Typically, we review the trial court's decision to admit or to exclude evidence for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). "An abuse of discretion occurs when the court's decision either clearly contravenes the logic and effect of the facts and circumstances" before it, or the court "misinterprets the law." *Nardi v. King*, 253 N.E.3d 1098, 1103 (Ind. 2025) (quotation marks omitted).

However, in *Candler v. State*, 837 N.E.2d 1100, 1103 (Ind. Ct. App. 2005), a panel of this court observed that "[a]s a general rule, when the admission of evidence is predicated on a factual determination by the trial court, we review under a clearly erroneous standard of review." We concluded that "the clearly erroneous standard appears semantically to be more correct than the abuse of discretion standard when applied to factual determinations of the trial court." *Id.* at 1104. Quoting our Supreme Court's opinion in *Pruitt v. State*, 834 N.E.2d 90, 104 (Ind. 2005), we explained,

> Trial courts do not, however, have "discretion" to make findings. Rather, trial courts are to use their best judgment to arrive at the correct result. They are bound by the law and the evidence and it is usually an error, not an "abuse" if the appellate court

disagrees. Trial courts must of course exercise judgment, particularly as to credibility of witnesses, and we defer to that judgment because the trial court views the evidence first hand and we review a cold documentary record. Thus, to the extent credibility or inferences are to be drawn, we give the trial court's conclusions substantial weight. *But to the extent a ruling is based on an error of law or is not supported by the evidence it is reversible, and the trial court has no discretion to reach the wrong result.*

*Candler*, 837 N.E.2d at 1104 (emphasis added). Thus, we will apply the clearly erroneous standard of review because we are reviewing the trial court's ruling on whether the evidence may be introduced.

[14] Additionally, "[e]ffective January 1, 1994, the Indiana Supreme Court adopted the Indiana Rules of Evidence." *Graham v. State*, 736 N.E.2d 822, 824 (Ind. Ct. App. 2000), *trans. denied*. "Indiana Evidence Rule 412, commonly referred to as the Rape Shield Rule, embodies the basic principles of Indiana's Rape Shield Statute[.]" *Id.* In *Graham*, we followed our Supreme Court's decision in *State v. Walton*, which said,

> [I]nquiry into a victim's prior sexual activity is sufficiently problematic that it should not be permitted to become a focus of the defense. Rule 412 is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and, importantly, to remove obstacles to reporting sex crimes.

*Id.* at 825 (quoting *State v. Walton*, 715 N.E.2d 824, 826 (Ind. 1999)). "However, Evid. R. 412 was not adopted verbatim from the Rape Shield

Statute."[2] *Graham*, 736 N.E.2d at 825. "To the extent there are any differences, Evid. R. 412 controls." *Id.*

[15] Evidence Rule 412(a) prohibits the admission of evidence offered to prove that a victim or witness engaged in other sexual behavior to prove a victim's or witness's sexual predisposition in a criminal proceeding involving alleged sexual misconduct. However, evidence of specific instances of a victim's or witness's sexual behavior is admissible if offered to prove that someone else was the source of semen, injury, or other physical evidence, or to prove consent, and exclusion of that evidence would violate the defendant's constitutional rights. Evid. R. 412(b).

[16] Significant to our discussion here is the common-law exception that survived the adoption of the Indiana Rules of Evidence. *See Walton*, 715 N.E.2d at 826-27. "This exception provides that evidence of a prior accusation of rape is admissible if: (1) the victim has admitted that her prior accusation of rape is false; or (2) the victim's prior accusation is demonstrably false." *Graham*, 736 N.E.2d at 825. "In presenting such evidence, the defendant is not probing the complaining witness's sexual history." *Id.* "Rather, the defendant proffers the evidence for impeachment purposes to demonstrate that the complaining witness has previously made false accusations of rape." *Id.* "Viewed in this light, evidence of prior false rape accusations is more properly understood as

---

[2] Ind. Code § 35-37-4-4 (2018) (Rape Shield Statute).

verbal conduct, not sexual conduct." *Id.* "Consequently, its admission does not run afoul of the Rape Shield Rule." *Id.*

[17] "It is important to note, however, that prior true accusations of rape do constitute evidence of the complaining witness's prior sexual conduct." *Id.* "Such evidence is therefore inadmissible under the Rape Shield Rule." *Id.* We further note, as discussed in *Graham*, that the statutory procedural requirements of written notice of intent to offer such evidence and a hearing to determine if that evidence is admissible under Evidence Rule 412(c) are still required even if the evidence involves the common law exception and not a statutory exception. *Id.* at 825-26.

[18] Defining "demonstrably false," has proven to be elusive. "False" is a term readily understood as being untrue. But what does it mean to be "demonstrably false?" In *State v. Luna*, a panel of this Court considered what it means for a claim to be demonstrably false, when the complaining witness has not admitted the falsity of the prior accusations. 932 N.E.2d 210 (Ind. Ct. App. 2010). We noted that the decision in *Candler v. State* leads to the conclusion that the lack of criminal charges does not, by itself, equate to the conclusion that a prior allegation is demonstrably false. *Id.* at 214-15 (discussing *Candler v. State*, 837 N.E.2d 1100, 1104 (Ind. Ct. App. 2005)). And we observed that in *Williams v. State*, the existence of an inference that the prior accusation is false without more is not enough to establish a prior accusation is demonstrably false. *Luna*, 932 N.E.2d at 215 (discussing *Williams v. State*, 779 N.E.2d 610 (Ind. Ct. App. 2002)).

[19] The Merriam Webster Dictionary defines "demonstrable" as "capable of being demonstrated." Merriam-Webster, https://www.merriam-webster.com/dictionary/demonstrable [https://perma.cc/4DZS-A8N6] (last visited March 6, 2026). And it provides synonyms for the word "demonstrable," which include the words "verifiable," "confirmable," and "empirical." *Id.*

[20] On transfer in *State v. Walton*, our Supreme Court acknowledged our earlier observation in that case that "while 'no bright line rule can be established' for determining whether a prior accusation is demonstrably false, the demonstrably false standard is 'more stringent than a mere credibility determination.'" 715 N.E.2d at 828 (quoting *State v. Walton*, 692 N.E.2d 496, 501 (Ind. Ct. App. 1998) (vacated on transfer)).

[21] We note that, in the present case, the trial court did not provide an explanation for its determination that the prior accusations were demonstrably false, just that Watson had met his burden. And we will not speculate as to the court's rationale. But we pause now to note how the facts of this case differ from the ones discussed above and explain why the trial court's decision must be reversed.

[22] Here, Watson seeks the introduction of M.S.'s three prior allegations of sexual abuse, involving sexual misconduct and rape.[3] The record before us reveals that M.S. did not admit that her prior accusations were false. And Watson offered no evidence to suggest that her accusations were demonstrably false.[4]

[23] In *Candler*, the complaining witness testified that she misinterpreted her step-father's intentions when he touched her. 837 N.E.2d at 1104. Thus, she did not admit her accusation was false and the accusation was not proven demonstrably false by her clarification. *Id.* In *Graham*, the alleged victim's prior accusation that she was sexually assaulted while she was intoxicated was inadmissible because she did not admit it was false, and the fact charges were not filed did not render her accusation demonstrably false. 736 N.E.2d at 826.

[24] Here, unlike in *Walton*, there was no other evidence to show that the prior accusations were demonstrably false. *See e.g., Walton*, 715 N.E.2d at 825 (where two witnesses testified complaining witness made rape accusation and complaining witness testified she did not make accusation and prior rape did not occur, prior accusation was demonstrably false); *Williams*, 779 N.E.2d at 614 (complaining witness never admitted prior accusation was false, and

---

[3] "The common law exception to prior false accusations of rape has been interpreted to apply not only to rape, but also to prior false allegations of sex crimes." *State v. Luna*, 932 N.E.2d 210, 213 (Ind. Ct. App. 2010).

[4] A non-exhaustive list of ways to establish that the prior accusations are demonstrably false include: (1) exculpatory DNA evidence; (2) verification that the accused could not have been present at the location of the incident; and (3) eyewitness testimony to the contrary at the time the incident is alleged to have occurred.

independent witness's contradictory testimony about whether complaining witness made accusation to him did not make her prior accusation demonstrably false). M.S. was the sole witness who testified at the hearing. Absent other evidence, a determination of her credibility alone cannot support a ruling that her prior accusations were demonstrably false. *Walton*, 715 N.E.2d 828.

[25] Under Indiana Law, "[p]rior accusations are demonstrably false where the victim has admitted the falsity of the charges or they have been disproved." *Fugett v. State*, 812 N.E.2d 846, 849 (Ind. Ct. App. 2004).[5] According to our case law, and our review of the record, Watson has not met his burden of establishing that the claims are demonstrably false, and we must reverse the trial court's preliminary evidentiary ruling.

---

[5] Other states handle the admissibility determination differently. For example, in Kentucky, a defendant may meet his or her burden of establishing that a prior accusation is demonstrably false by showing "that the prior accusation had a distinct and substantial probability of being false. We reiterate that this does not require absolute proof of falsity." *Perry v. Commonwealth*, 390 S.W.3d 122, 130 (Ky. 2012). The court observed that "[e]ven the Commonwealth is only required to prove its case against a defendant beyond a reasonable doubt, which is less than absolute proof (or proof beyond any and all doubt)." *Id.* And in Iowa, "a criminal defendant wishing to admit such evidence must first make a threshold showing to the trial judge outside the presence of the jury that (1) the complaining witness made the statements and (2) the statements are false, based on a *preponderance of the evidence*." *State v. Alberts*, 722 N.W.2d 402, 409 (Iowa 2006) (emphasis added). The Iowa Supreme Court followed the New Jersey Supreme Court's determination that the preponderance of the evidence standard "strikes the right balance, placing an initial burden on the defendant to justify the use of such evidence while not setting an exceedingly high threshold for its admission." *State v. Guenther*, 854 A.2d 308, 324 (N.J. 2004).

## Conclusion

[26] The trial court's determination that Watson had met his burden of establishing the admissibility of M.S.'s prior accusations of sexual abuse and/or rape was clearly erroneous because Watson did not show that M.S. admitted that they were false or that the prior accusations were demonstrably false. Accordingly, we must reverse the trial court's decision and remand this matter for further proceedings.

[27] Reversed and remanded.

Vaidik, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Walter R. Hagedorn, II
Tell City, Indiana